**O.S. WYATT, Jr., Appellant,**

v.

**John S. McGREGOR, et al., Appellees.**

No. 13–91–526–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 25, 1993.

Opinion on Rehearing April 22, 1993.

Rehearing Overruled May 27, 1993.

Tracy N. Dubose, Montgomery, John Miller, Jr., Sinton, Russell McMains, and Kimberly Hall Seger, Seger & Allison, Corpus Christi, for appellant.

Thomas F. Nye, Brin & Brin, Corpus Christi, George Brin, Brin & Brin, San Antonio, James Whitten, Sinton, for appellees.

Before KENNEDY, SEERDEN, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

KENNEDY, Justice.

Appellant O.S. Wyatt, Jr. sued a variety of persons for relief from and/or damages resulting from a real estate deal gone awry. After a jury trial, the court entered a take-nothing judgment against Wyatt. Wyatt appeals by forty-one points of error. We affirm in part and reverse and remand in part.

### BACKGROUND

Wyatt and the other parties agree on much of the mechanics of the underlying transactions, but diverge when they place these events into context. Wyatt paints himself as the victim of deceptive sellers (A.A. and the late Fanny S. McGregor), their agents (John S. McGregor; J. Patrick McGloin; and Kleberg, Dyer, Redford & Weil), his partner (Gerald Q. Ashbrook), Lowell Michael Archer, and transaction facilitators (Ruth and William G. Walston, Sr.). This appeal focuses on the McGregors. The McGregors portray themselves as innocent sellers who attempted to meet the desires of their buyers.

In late 1983, Ashbrook learned that the State of Texas was interested in acquiring wetlands for the State School Land Board. Ashbrook began looking into acquiring wetlands to resell to the state. Ashbrook heard about a ranch owned by A.A. and Fanny McGregor that might suit Ashbrook's needs. Ashbrook asked Johnnie B. Rogers, Sr., to help incorporate Sunbelt Cattle & Land Co. (Sunbelt). Ashbrook, Rogers, and Anthony Skarlis formed Sunbelt (sharing the stock ownership—34, 33, and 33 shares respectively) for the purpose of purchasing the McGregor ranch for resale to the state. Rogers contracted to sell the ranch to the state for $1,500 per acre. Rogers requested financing from Texas Commerce Bank–Austin (TCB) to purchase the ranch from the McGregors. TCB re-

quired Sunbelt to find a financially healthy person. Rogers called Wyatt.

Wyatt agreed to participate. In April 1984, he joined Rogers, Ashbrook, and Skarlis as a guarantor on Sunbelt's $3.6 million note from TCB. In return, Wyatt received 35% of Sunbelt's common stock. Wyatt also gained the right to vote an additional 16% of the stock, which Rogers owned.

Ashbrook received a limited corporate authorization to bind Sunbelt to a land-purchase agreement with the McGregors. Ashbrook, for Sunbelt, and the McGregors signed two earnest money contracts, one dated February 3, 1984, and the other dated February 4, 1984. The contracts were identical except that the second deleted the obligation of the seller to furnish a survey of the land. The second contract detailed different prices on the individual tracts that combined for an average price of $900 per acre. Attached to each contract was the identical Exhibit A describing the land. The total of the acreage in Exhibit A was less than the amount set forth in the main body of either of the contracts.

The McGregor–Sunbelt transaction closed on April 20, 1984. The warranty deed to Sunbelt carved 60 acres out of the acreage promised to Sunbelt in the earnest money contracts. Ashbrook received a general warranty deed for the 60 acres. The next day, Ashbrook conveyed the 60 acres to Lowell M. Archer.

The state then refused to buy the land from Sunbelt. Sunbelt could not find another buyer and defaulted on the note. Wyatt purchased the note and deed of trust when the other guarantors defaulted on their obligation to pay their shares of the note. He took control of the company, taking all the shares for himself and installing new leadership. He hired an independent appraiser who estimated that the property was worth only $400 to $500 per acre.

Wyatt hired Julius "Bubba" Petrus to survey the property pursuant to the description in the warranty deed. Petrus testified that he had difficulty surveying the property because some of the descriptions lacked metes and bounds descriptions, referred to concealed or nonexistent markers, referred to unlocated maps, and failed to close mathematically or geometrically.

Wyatt purchased the property at foreclosure sale for $1,373,384.20, or $340 per acre. He credited the amount to the note, took possession of the property, and began running cattle on the property. He then learned that some of the tracts were not contiguous and that the easements did not provide access to much of the acreage.

Wyatt took assignment of Sunbelt's cause of action against the McGregors and sued them for rescission and cancellation of the deed and restitution. He charged that the McGregors failed to convey all of the property listed in the earnest money contracts, failed to provide promised access to the property, and represented wrongly that the descriptions of the property in the earnest money contracts and the warranty deed would allow the property to be located with reasonable certainty. He also sued for deceptive trade practices (DTPA), breach of contract, common law and statutory fraud, conspiracy, and breach of warranty. The court granted a summary judgment as to the DTPA claims based on statute of limitations bar. The parties brought in a variety of third parties, including Ashbrook; J. Patrick McGloin, the McGregors' lawyer; Kleberg, Dyer, Redford & Weil, McGloin's former law firm; Lowell M. Archer, the title holder to the 60 acres; and William Walston, Sr. and Ruth Walston, the title company owners.

The court submitted 31 questions, some with subparts, to the jury. Based on their findings, the court entered a take-nothing judgment against Wyatt on all claims. Wyatt appeals, launching a variety of attacks against the judgment. He contends that the evidence does not support some of the jury's findings, that some findings conflict with each other, and that the evidence supports conclusions opposite from some findings. These points deal with the judgment for the McGregors only and do not address the other parties.

## DISCUSSION

The parties grouped the 41 points of error two different ways to facilitate discussion under argument and counterpoints. We group them yet a third way.

■ Wyatt raises three points of error challenging the evidentiary basis of the jury's answer to Question 20. That question asked, "Do you find from a preponderance of the evidence that the Subject Property can not be identified with reasonable certainty from the written description in the Warranty Deed or by reference to some other existing writing contained in the deed?" The jury responded, "We do not." Point of error five contends that the court erred in failing to disregard this answer because the uncontroverted evidence establishes as a matter of law that the deed description is insufficient. Point of error six contends that the court erred in failing to disregard the finding because there is no evidence to support the jury's finding. Point of error seven contends that the answer is so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ The standards of review for such challenges fall into a two-part test with alternative second steps. In step one, the "no evidence" point (point of error six), we consider only evidence and inferences that tend to support the finding (or in this case, the failure to find), and ignore all contrary evidence and inferences. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *see also Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). If there is evidence of probative force to support the failure to find, we must overrule the point of error. *Sterner*, 767 S.W.2d at 690–91; *Responsive Terminal*, 774 S.W.2d at 668; *Stafford*, 726 S.W.2d at 16. If there is no evidence to support the jury's failure to find a fact, we then examine the record to see if the contrary proposition is established as a matter of law (point of error five). *Sterner*, 767 S.W.2d at 690. In this case, if there is instead some evidence to support the failure to find, we examine the

entire record to see whether the jury's failure to find is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust (point of error seven). *Reviea v. Marine Drilling Co.*, 800 S.W.2d 252, 254 (Tex.App.— Corpus Christi 1990, writ denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973)).

■ The law setting out the requirements of deed language specificity, against which we measure the adequacy of the factual support for the jury findings, is not itself particularly specific. The Supreme Court of Texas held that the description in the writing memorializing the transfer of ownership "must furnish within itself, or by reference to some other existing writing, the means or data by which that particular land may be identified with reasonable certainty." *Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex.1977) (citing *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945) (citations omitted)); *see Boyert v. Tauber*, 834 S.W.2d 60, 63 (Tex.1992). The Dallas Court of Appeals held that the purpose of the deed description is to furnish the means of identification of the land, not to identify the land. *American Spiritualist Ass'n v. City of Dallas*, 366 S.W.2d 97, 102 (Tex. Civ.App.—Dallas 1963, no writ). Though the essential elements of the contract may never be supplied by parol, details which explain or clarify those terms may be shown by parol. Resort to extrinsic evidence, while not proper for supplying the location or description of the land, is proper to help identify the land with reasonable certainty from the information in the writing. *Wilson*, 188 S.W.2d at 152; *see also Teledyne Isotopes, Inc. v. Bravenec*, 640 S.W.2d 387, 390 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). The supreme court later held that "[i]f enough appears in the description so that a party familiar with the locality can identify the premises with reasonable certainty, it will be sufficient." *Gates v. Asher*, 280 S.W.2d 247, 248–49 (Tex.1955). The high court held that courts should liberally construe a

deed's descriptive words in order to uphold the conveyance. *Id.* at 248. The court also held that parol evidence to identify the property was admissible so long as the writing contained the nucleus of description. *Id.* The Tyler Court of Appeals echoed the *Gates* theme when it stated that the description need not be mathematically certain, but only reasonably certain so as to enable a party familiar with the locality to identify the premises to the exclusion of others. *Browning v. West,* 557 S.W.2d 848, 850 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). The Tyler court held that "[a] deed is not void for uncertainty unless the description cannot be made to apply to any definite piece of land even with the aid of extrinsic evidence." *Browning,* 557 S.W.2d at 851 (citations omitted); *see also American Spiritualist,* 366 S.W.2d at 102. These holdings resemble an earlier holding by the Waco court that a deed is not void if a court can apply any rules of construction, coupled with extrinsic evidence, to the deed and determine what property it is intended to convey. *Kuklies v. Reinert,* 256 S.W.2d 435, 436 (Tex.Civ.App.—Waco 1953, writ ref'd n.r.e.).

Wyatt's surveying experts—Julius "Bubba" Petrus, Dr. Robert Bruner, and Randolph King—provided the testimony on this issue. All three testified to deficiencies in the deed and problems with surveys. When asked on direct examination his opinion whether the property described in the deed could be located with reasonable certainty, Petrus responded that it could not; Dr. Bruner responded that the majority of the tracts could not be found with reasonable certainty. On cross examination, however, Petrus responded affirmatively when asked if he believed that, through the deed description plus his field work, he had found where the land lies. On cross examination, Dr. Bruner stated that he had flown over the ranch but had never set foot on it, that he did not do any field work, that he basically agreed with everything Petrus testified, and that problems in the property description might be resolved from the ground.

The testimony provides sufficient evidence to support the jury's finding. Petrus's cross-examination testimony clearly eliminates the foundation of point of error six (and thus point of error five) by providing some evidence contradicting Wyatt's desired finding. That same testimony provides a basis for the jury's finding. The jury could have found that the deed descriptions were a sufficient nucleus to provide the means by which the land could be found with reasonable certainty.

█ Wyatt's objections to specific property descriptions also fail. Wyatt's objections to the locatability of Tracts 3 and 4 fail because Petrus testified that he believed his survey located the property. Wyatt's challenge to the locatability of Tract 7 fails because the deed in the case to which he attempts to analogize was much less descriptive than the description of Tract 7. *See McMurray v. Standley,* 1 S.W.2d 592 (Tex.Comm'n App.1928, judgm't adopted). Once the court in *McMurray* had rejected the impossible elements of the description, the remaining descriptors left two sides of the property defined, leaving an infinite number of possibilities for the remaining sides. *Id.* at 593. Wyatt raises no such impossible elements in the description of Tract 7. The description of Tract 7 provides established lines for three sides—the Nueces River as the southern boundary and the eastern and northern boundaries at right angles to each other—with the western side to be placed at a right angle to the northern boundary running down to the river so as to enclose a definite quantity of acreage. This description leaves room for only one line to satisfy its limits, and is thus distinct from the description in *McMurray.* We overrule points of error five, six, and seven.

Our ruling affirming the jury's finding that the property descriptions in the warranty deed were sufficient resolves other points of error as well. By point of error four, Wyatt urges that the trial court erred in failing to enter judgment based on the answer to Question 11[1] because the evidence establishes as a matter of law that

1. The text of Question 11 is set out two paragraphs below.

the property description in the warranty deed is insufficient. As we found above, sufficient evidence supports the jury's finding in Question 20 rejecting the assertion that the description in the warranty deed was insufficient. Since point of error four is dependent on a conclusion that the descriptions in the warranty deeds are insufficient, we overrule point four.

We also overrule point of error four because it depends on an interpretation of the jury's answer to Question 11 which cannot stand in light of the jury's answers to other questions. The correct interpretation of the answer to Question 11 is apparent when we look at point of error nine.

■ In point of error nine, Wyatt complains that the trial court erred in entering judgment for the defendants on Question 20 because the answer to Question 20 irreconcilably conflicts with the answer to Question 11. The Supreme Court of Texas has held that

> [t]rial courts must reconcile apparent conflicts in the jury's findings if this can reasonably be done in light of the pleadings and the evidence, the manner in which the issues were submitted, and the findings when considered as a whole.

*Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980) (citing *Ford v. Carpenter*, 147 Tex. 447, 216 S.W.2d 558, 562 (1949)). Question 11 asked

> Do you find from a preponderance of the evidence that Sunbelt and the McGregors closed the sale of the Subject Property without knowledge of a mutual mistake in that they believed that the description within itself, or by reference to some other existing writings, contained in the warranty deeds, was sufficient to describe the land so as to identify it with reasonable certainty?

The jury answered, "We do." This answer does not conflict irreconcilably with the jury's failure to find under Question 20 that the property descriptions were insuffi-

cient. The answer to Question 20 means that the parties' belief that the descriptions were sufficient was correct and not a mutual mistake.[2] Since there was no mistake, the parties clearly could close without knowledge of that nonexistent mistake. We overrule point of error nine.

We overrule points of error three and eight under similar reasoning. Point of error three differs from point of error four in two respects that have the same root. By point of error three, Wyatt contends that the descriptions in the earnest money contracts, rather than those in the warranty deed, were insufficient as a matter of law. Point of error three also deals with the answer to Question 10,[3] which related to the descriptions in the contracts, instead of Question 11, which related to the descriptions in the deed. These differences are minimal because the descriptions in Exhibit A to the earnest money contracts are virtually identical to those in the warranty deeds. Since we found that sufficient evidence supports the jury's finding that the descriptions in the deeds are sufficient, we reject the contention that the descriptions in the earnest money contracts are insufficient as a matter of law. Since point of error three is dependent on a conclusion that the descriptions in the earnest money contracts are insufficient, we overrule point of error three.

Point of error eight (and three as well) succumbs to the non-conflicting answer analysis used above on point of error nine. The jury's answer to Question 10 (that the parties closed without knowledge of mutual mistake by believing that the property description in the earnest money contracts were sufficient) does not conflict with their answer to Question 20 under the interpretation that the parties closed the deal without knowledge of mutual mistake because there was no mutual mistake. We overrule point of error eight.

---

**2.** The jury's answer to Question 26 reinforces the view that the jury believed the description was sufficient to allow the property to be located. When asked by what date Sunbelt discovered or should have discovered that the descrip-

tions were insufficient, the jury responded, "Property can be located."

**3.** Question 10 and its answer are discussed in the next paragraph.

Points of error one and two also fall under the above reasoning. Wyatt asserts by these points of error that the trial court erred in failing to enter judgment for rescission and cancellation of the sales contract based on the jury's answer to Questions 10 and 11. These points of error rely on interpreting the answers to Questions 10 and 11 to mean that the jury found the parties closed the sale under a mutual mistake. Since, as discussed above, the jury found no mutual mistake, the points must fail. We overrule points of error one and two.

Similar rationales topple points of error 14–16 as well. These points of error involve the jury's seemingly curious answer to Question 26. That question asked, "By what date did Sunbelt discover, or in the exercise of reasonable diligence should have discovered, that the property conveyed could not be located with reasonable certainty, *if you have so found?*" (emphasis added). The jury responded, "Property can be located."

By point of error fourteen, Wyatt contends that the trial court erred in entering judgment based on this question because it did not answer the question as phrased and was against the great weight and preponderance of the evidence. The jury need not have responded at all since, as the italicized phrase shows, the question was conditioned on them having found that the property could not be located with reasonable certainty. As discussed above in point of error seven, the jury's finding that the descriptions were sufficient to allow such location were not against the great weight and preponderance of the evidence. The nonresponsive answer was unnecessary, but illustrates why the court's judgment is a valid interpretation of the jury's answers. We overrule point of error fourteen.

Wyatt charges by points of error fifteen and sixteen that the answer to Question 26 conflicts with the findings of mutual mistake in Questions 10 and 11. As discussed above, we assume that the trial court correctly harmonized these three findings by interpreting the answers to Questions 10 and 11 to mean that the jury found no mutual mistake. This reconciliation causes us to overrule points of error fifteen and sixteen.

The interpretation that the jury found no mutual mistake renders point of error thirty-four meaningless. In response to Question 8A, the jury found that Sunbelt discovered or should have discovered any mutual mistake in the transaction by April 20, 1984. Wyatt challenges the sufficiency of the evidence for this answer, but the finding of no mutual mistake renders the finding of a discovery date hypothetical and without practical import.[4] We find that point of error thirty-four is moot.

 Wyatt raises a number of points of error unrelated to the mutual mistake points. By point of error twenty-five, he contends that the jury's answer to Question 1(b) regarding the McGregors' representation in the earnest money contract that they would convey all the subject property was against the great weight and preponderance of the evidence. The jury found that the representation was not false. Since this representation was a promise of future action, it cannot form the basis of a fraud action unless the promissor lacked contemporaneous intent to perform. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986); *see also Schindler v. Austwell Farmers Co-op.,* 829 S.W.2d 283, 286 (Tex.App.—Corpus Christi 1992), *modified on other grounds and aff'd,* 841 S.W.2d 853 (Tex.1992); *Wolf v. Fernandez,* 733 S.W.2d 695, 697 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.). The representation is not necessarily shown to be fraudulent merely because the promisor breaks the promise or fails to perform. *Spoljaric,* 708 S.W.2d at 435; *see also Schindler,* 829 S.W.2d at 286. Wyatt contends that the McGregors' carving out of the 60 acres from the conveyance to Sunbelt was not contemplated in

---

4. The jury's specification of a discovery date of any mutual mistake might seem to conflict with a finding of no mutual mistake. Wyatt does not raise this issue, but we find that the answers can be harmonized. The jury found that, if there had been a mutual mistake, Wyatt or Sunbelt should have discovered it on the date of closing when the documents of sale were signed.

the earnest money contract and thus proves the representation that the McGregors would convey all the property was false. Wyatt points to no evidence (and our review discloses none) that the McGregors lacked the intent to fulfill the terms of the earnest money contract when they signed it. Instead, the evidence indicates that the McGregors intended when they signed the contract to sell all the land to Sunbelt; they may not have known[5] even at closing that the 60 acres were carved out.[6] Sufficient evidence supports the jury's finding that the McGregors' representation in the earnest money contract was not false.

■■■ Wyatt asserts that he should not be bound by the contract under points of error attacking jury findings that Ashbrook had authority (actual or apparent) to bind Sunbelt, that the McGregors did not breach the earnest money contract or the warranty deed, that any breach by the McGregors did not damage Sunbelt, and that Sunbelt ratified the transaction. We will address the ratification issues first because they render moot the other points of error.

By three points of error, Wyatt attacks the jury's finding that Sunbelt ratified the transaction. The jury found that Sunbelt expressly or impliedly ratified the purchase of the McGregor property as consummated. By point of error eleven, Wyatt contends that this finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.

■■■ The key concern in determining whether a principal has ratified an unauthorized act by an agent is the principal's knowledge of the act and subsequent actions with that knowledge. *Land Title Co. of Dallas v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 756 (Tex.1980). Ratification may be express or implied. *Southwestern Bell Tele. Co. v. Wilson,* 768 S.W.2d 755, 764 (Tex.App.—Corpus Christi 1988, writ denied). It may occur when a principal retains the benefits of a transaction after acquiring full knowledge of the unauthorized act of an agent. *Land Title,* 609 S.W.2d at 756; *see also Wakefield v. Bevly,* 704 S.W.2d 339, 349 (Tex.App.—Corpus Christi 1985, no writ). The knowledge to support ratification may be shown by evidence either of knowledge or facts from which such knowledge may reasonably be imputed to the principal. *Lang v. Lee,* 777 S.W.2d 158, 162 (Tex.App.—Dallas 1989, no writ); *Thermo Products v. Chilton Ind. School Dist.,* 647 S.W.2d 726, 733 (Tex. App.—Waco 1983, writ ref'd n.r.e.).

■■■ Absent fraud, people are presumed to know the contents of a document that they sign; they should protect themselves by reading before signing. *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962); *Eubank v. First Nat'l Bank of Bellville,* 814 S.W.2d 130, 134 (Tex.App.—Corpus Christi 1991, no writ). At a board of directors meeting held after the deal with the state fell through and Wyatt assumed control of the company, Sunbelt expressly ratified the first earnest money contract, the promissory note and its extension, the deed to Sunbelt, and the deed of trust. The board could have seen the exception of the 60 acres and the exclusion of another 73 acres by simply comparing the property descriptions in the exhibits to the earnest money contract[7] and the deed.[8] The board could

---

**5.** "Known" here refers to actual conscious knowledge and does not include knowledge imputed under an obligation to read and be bound by documents that one signs.

**6.** The McGregor's lawyer and agent Pat McGloin testified that he knew of the 60–acre exception prior to closing. He testified that he must have learned of it from John McGregor. John McGregor, however, flatly denied knowing of the exception prior to closing.

**7.** This statement holds true even though the board ratified the first earnest money contract rather than the second. As discussed above, the

differences between the first and second contracts regarded a survey and a breakdown of the price per acre. The property descriptions in the first and second contract were the same, so the same differences appear between the first contract and the deed as between the second contract and the deed.

**8.** Ashbrook's further action in getting the 60 acres deeded to himself is irrelevant to Sunbelt's cause of action for breach of contract. The breach, if any, occurred when the McGregors did not deed to Sunbelt property that under the

have seen that the price per acre was greater than $900 per acre by dividing the dollar figure in the note by the acreage in the deed, or by dividing the dollar amount agreed to in the contract by the acreage in the contract or the deed. In the years following the board's ratification of these documents, Sunbelt or Wyatt received money from mineral exploration leases, rights-of-way, pipeline damage settlements, and cattle operations on the former McGregor ranch; Sunbelt or Wyatt also paid the county and school district taxes owing on the land.

The jury's finding of ratification is not against the great weight and preponderance of the evidence. The evidence shows that the board expressly ratified documents that show the actions of Ashbrook which may have exceeded his authority and caused the actual transaction to differ from the contract terms. Wyatt contends that Sunbelt did not know at that time of the deviations from the contract but, since we have upheld the jury's finding of no fraud, Sunbelt is presumed to know the contents of the documents it ratified. After the express ratification, Sunbelt and Wyatt retained and continued to accept the benefits of the transaction.[9] Sufficient evidence supports the jury's finding that Sunbelt ratified the transaction. We overrule point of error eleven.

This ratification was not limited, as Wyatt argues in point of error twelve, to the 60–acre portion of the property. Wyatt argues that the placement of Question 25 in the charge means that the ratification issue pertains only to the 60 acres. He offers no support for this statement and we see none. To the contrary, Question 25 contained a subpart asking specifically whether Sunbelt ratified the 60–acre portion of the transaction. The court instructed the jury to answer that subpart, however, only if it found in Question 25 that Sunbelt did not ratify the transaction as consummated. Since the jury found ratification of the transaction, it did not address

the narrow question of the 60–acre portion of the transaction. There is no theme in the overall progression of questions indicating that Question 25 is limited to the 60–acre portion. Question 24 asks whether Ashbrook had authority to consummate the transaction as he did; it also has optional alternative subparts similar to Question 25. Question 26 asks by what date Sunbelt should have known of deficiencies in the property description. We find that the jury's answer to Question 25 refers to the entire transaction. We overrule point of error twelve.

The answer to Question 25 does not conflict with the answers given in Questions 10 and 11. By point of error thirteen, Wyatt raises an argument similar to those raised above with regard to conflicting answers. We rule on it similarly. Wyatt contends that the finding of ratification in Question 25 cannot coexist with a finding of mutual mistake in Questions 10 and 11. If, as above, we interpret the jury's answers to Questions 10 and 11 to mean that the parties did not make a mutual mistake while closing the deal, such answers do not conflict with or bar a finding of ratification of the transaction by Sunbelt. We overrule point of error thirteen.

Our affirmation of the finding of ratification renders unnecessary consideration of the merits of some other points of error. Wyatt attacked as against the great weight and preponderance the jury's findings that the McGregors' failure to comply with the earnest money contract was excused, that the McGregors did not materially breach the contract, that any breach did not damage Sunbelt, and that Ashbrook did not act without authority or apparent authority to convey the 60 acres to himself, to consummate the transaction as he did, or to have Sunbelt pay the amount he did. Ratification renders these questions of noncompliance, breach, and authority irrelevant. *See Land Title*, 609 S.W.2d at 756–57. We need not reach points of error ten and twenty-seven through thirty-two.

contract was to be deeded to Sunbelt. To whom they did deed the property is immaterial.

9. As part of his suit, Wyatt did request rescission of the deal, which would include his return of any profits.

We discount a similar point of error for a different reason. In Question 2, the court asked if the jury found that the McGregors breached the warranty contained in the warranty deed by failing to convey all the acreage described in the earnest money contracts to Sunbelt. The jury responded, "We do not." By point of error twenty-six, Wyatt attacks this finding as against the great weight and preponderance of evidence. The warranty in the deed protects the buyer from damages resulting from defects in the seller's title. *City of Beaumont v. Moore*, 146 Tex. 46, 202 S.W.2d 448, 453 (1947). The warranty goes to the title of the land actually conveyed. It has no bearing on and is not affected by lands not within the deed, such as lands agreed to be conveyed under a contract but not conveyed. As Question 2 has no legal import, the quality of the support for the jury's answer is irrelevant. We do not reach point of error twenty-six.

By point of error thirty-three, Wyatt complains that the jury's answer to Question 5 was against the great weight and preponderance of the evidence. The jury failed to find that the McGregors and their agents took advantage of the lack of knowledge, ability, experience, or capacity of Sunbelt to a grossly unfair degree. Wyatt presents no argument or authority in support of this proposition. Our review of the record shows that the point lacks merit. Although the experience of McGloin, the McGregors' lawyer, may have given them an advantage over the original partners of Sunbelt (Rogers, an administrative lawyer/lobbyist; Ashbrook, a certified public accountant; and Skarlis, a businessman), any inequity vanished when Wyatt became part of Sunbelt. Even if we discount the experience of Wyatt (and his employees) because of his limited involvement in the transaction, there is no indication of the McGregors taking advantage of Sunbelt. There is certainly no indication that there was any grossly unfair exploitation. We overrule point of error thirty-three.

By point of error thirty-five, Wyatt urges that the trial court erred in granting a partial summary judgment in favor of the McGregors against Wyatt's Deceptive Trade Practices Act (DTPA) claims and overruling Wyatt's motion to reconsider. We consider only the first prong of that point and reverse.

We reverse because the McGregors did not carry their burden on their motion for summary judgment. The court rendered partial summary judgment based on the McGregors' motion, Wyatt's response and supporting affidavits, and the pleadings. Summary judgment is appropriate in the trial court if the pleadings, affidavits, and other documents on file at the time of the hearing show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion. Tex.R.Civ.P. 166a(c). Defendants are entitled to a summary judgment if they conclusively establish as a matter of law all elements of an affirmative defense such as the statute of limitations. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Long v. State Farm Fire and Cas. Co.*, 828 S.W.2d 125, 127 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The question on appeal from a grant of summary judgment is not whether summary judgment proof raised a fact issue, but whether it established that movants were entitled to summary judgment as a matter of law. *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990); *Riojas v. Phillips Properties, Inc.*, 828 S.W.2d 18, 21 (Tex.App.—Corpus Christi 1991, writ denied). We must indulge every reasonable inference in favor of the nonmovants and resolve all doubts in their favor. *Gonzalez*, 795 S.W.2d at 736; *Riojas*, 828 S.W.2d at 20.

The McGregors moved for summary judgment based on the DTPA's two-year statute of limitations. Tex.Bus. & Com. Code Ann. § 17.565 (Vernon 1987). That rule requires that DTPA actions be filed within two years of the date of the violation, the date on which the complainant discovered the violation, or the date by which the complainant should have discov-

ered the violation. The McGregors argued that the suit, filed on May 7, 1987, was filed too late because Sunbelt's last dealings with the McGregors occurred on the date the transaction closed—April 20, 1984. Wyatt responded that he reasonably did not discover the deceptive acts until a time within two years of May 7, 1987; he supported this with affidavits that the McGregors attacked as deficient for various technical reasons. The court granted the motion for partial summary judgment at the hearing. The record on appeal does not contain any written order on the motion, but does contain the statement of facts of the hearing.

We reverse the court's ruling because the McGregors' motion did not defeat the discovery component of the statute of limitations. Wyatt's first amended original petition [10] stated that Wyatt bought the property himself on November 5, 1985, and thereafter discovered Ashbrook's presence on the 60 acres. That discovery prompted an investigation and lawsuit which, Wyatt alleged, revealed the deceptive acts. The discovery issue was raised by Wyatt's petition, and the McGregors' motion and affidavits did not establish that they nevertheless were entitled to recover as a matter of law.

■ The McGregors' counterpoint argues that the court submitted all DTPA jury questions Wyatt requested. The court submitted an instruction on producing cause; Question 5 on grossly unfair exploitation of inferiority, discussed above under point of error thirty-three; and Question 6 on producing cause, which the jury did not reach because of the failure to find exploitation under Question 5. The McGregors'

argument seems to imply that Wyatt waived or failed to preserve the point of error by failing to request a jury instruction on all DTPA claims. We find no support for such an argument. The grant of the motion for summary judgment should have removed DTPA claims from consideration by the jury. The jury's consideration of a question relevant to a DTPA claim does not alter this conclusion. The jury's consideration of that issue may be relevant as to preclusion of that issue on remand. We remand as to Wyatt's remaining DTPA claims not otherwise precluded by the judgment here that were erroneously barred by the court's grant of summary judgment.

By eight points of error, Wyatt complains of the jury's failure to find that he deserved damages. By point of error seventeen, he attacks the court's failure to disregard as supported by no evidence the jury's answer to Question 21. In that answer, the jury found that no sum of money paid by the McGregors to Wyatt would return the parties to the position they occupied had no agreement been made and were the property returned to the McGregors. This question is material only if there is a basis for rescission, however. In light of our findings that the judgment on the issues at trial and underlying jury findings were not reversible, the finding of no damages is harmless. The same analysis fells points of error eighteen through twenty,[11] twenty-three, and twenty-four.[12]

Points of error twenty-one and twenty-two fall to similar analysis. By point of error twenty-one, Wyatt contends that the trial court erred in entering judgment for the McGregors based on Question 21 be-

---

10. This is the petition on which the court heard the motion. The court held trial on plaintiff's sixth amended original petition and two trial amendments.

11. Point of error eighteen complains that the court erred in not disregarding the jury's answer to Question 21 because the uncontroverted evidence establishes that the McGregors were paid for the land and that the return of the money plus taxes and less benefits coupled with the return of the property to the McGregors would return the parties to their presale positions.

Point of error nineteen complains that the answer to Question 21 is against the great weight and preponderance.

Point of error twenty complains that the answer to Question 21 is manifestly inadequate.

12. Points of error twenty-three and twenty-four address the jury's answer to Question 22A that no sum of money would reasonably compensate Sunbelt for the McGregors' acts. By point of error twenty-three, Wyatt contends that such finding was against the great weight and preponderance and, by point of error twenty-four, that it was manifestly inadequate.

cause that answer conflicts with the answer to Question 13 in which the jury found that Sunbelt paid the consideration for the 60 acres conveyed to Ashbrook. By point of error twenty-two, Wyatt complains that the answer to Question 19 finding that the McGregors were not unjustly enriched by being paid for acreage not conveyed to Sunbelt. The finding of ratification, upheld above, resolves the conflict and dissolves the unjust enrichment claim. The ratification excused the failure to convey the 60 acres to Sunbelt and justified the enrichment. We overrule points of error seventeen through twenty-four.

By six points of error, Wyatt attacks the jury's finding that no attorneys' fees were warranted by Wyatt's attorneys for services rendered at trial, on appeal to this court, or on application for writ to the supreme court. Since we have affirmed the take-nothing judgment rendered on the issues at trial, Wyatt did not prevail, is not entitled to attorneys' fees, and any error in the jury's finding of no attorneys' fees is harmless. With our reversal of the summary judgment on the DTPA claims, a jury may find differently on remand as to attorneys' fees. With respect to the issues actually taken to trial, however, we overrule points of error thirty-six through forty-one.

We affirm the take-nothing judgment of the trial court as to its judgment rendered on all issues presented to the jury at trial. We reverse the partial summary judgment granted against Wyatt's DTPA claims and remand for trial on all DTPA issues not precluded by the trial below.

### OPINION ON MOTION
### FOR REHEARING

We write on rehearing to complete our analysis of Wyatt's thirty-fifth point of error. In that point of error, Wyatt contended that the trial court erred in granting the McGregors' motion for summary judgment against Wyatt's DTPA claims and overruling Wyatt's motion to reconsider *without allowing Wyatt the opportunity to amend his summary judgment proof.* We address here the italicized portion of the point.

Before reaching the main analysis, we dispose of the McGregors' contention on rehearing that we should not have reviewed the summary judgment because there was no copy of the partial summary judgment in the record, citing *Archer v. Storm Nursery, Inc.*, 512 S.W.2d 82, 83 (Tex.Civ.App.—San Antonio 1974, no writ). This case is distinct. In *Archer,* the court declined to review a summary judgment because the record contained neither the motion for summary judgment, nor three of the four depositions underlying the motion. *Id.* On such a record, the court held that it could not determine the basis for the judgment. *Id.* Here, we have the motion, the response, the hearing transcript, and the request for reconsideration. Further distinguishing this case from *Archer* and supporting our review is the fact that our analysis of the grant of summary judgment is properly not on whether the grant of summary judgment was correct; rather, our analysis focuses on whether summary judgment would have been appropriate had the court not improperly denied Wyatt the opportunity to amend the technical defects in its proof. On this record and facing the proper question, we proceed with our analysis.

At the summary judgment hearing, the McGregors objected that the affidavits supporting Wyatt's response to the summary judgment motion were defective in two ways. Rogers and Wyatt in their affidavits stated their competency as a conclusion rather than by stating that both were over 18 and had never been convicted of a crime, and their affidavits did not contain a statement that they were made on personal knowledge. Wyatt did not have the opportunity to amend (or to refuse to amend) this proof before the court granted the motion for summary judgment. He offered amended affidavits in his Motion for Leave to Amend Plaintiff's Response to Defendant's Motion for Summary Judgment and to Set Aside Partial Summary Judgment, but leave was not granted and the judgment was not set aside.

The rule of civil procedure that governs the use of affidavits in summary judgment

proceedings provides that "[d]efects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." TEX.R.CIV.P. 166a(f). A Houston court extended the requirement of objection at the trial level to defects to apply to prevailing parties as well. *Walkoviak v. Hilton Hotels Corp.* 580 S.W.2d 623, 626–627 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). The court held that a party that prevailed on summary judgment must object to defects in the opposition's affidavits at trial in order to raise the defects on appeal. *Id.* Though *Walkoviak* is distinguishable factually from this case, the principle applies to this case: parties must have the opportunity to amend defective affidavits before those defects are used to defeat a summary judgment opponent. Here, the McGregors objected to defects at the trial level, but because Wyatt was not given the opportunity to amend or to refuse to amend, the result was the same as if they had not objected at all. We hold that the trial court's grant of partial summary judgment without allowing Wyatt the opportunity to amend the affidavits upon hearing the objections to the defects was erroneous.

The analysis in our original opinion shows that this error was harmful. Had the court allowed Wyatt to amend the affidavits (as he attempted to do by his motion), they would have revealed a fact issue as to the reasonableness of the date of the discovery of the alleged DTPA violations, an issue raised by Wyatt's pleadings. The McGregors argue on rehearing that Wyatt's discovery date is not relevant to defeat summary judgment, since the DTPA violations were alleged on behalf of Sunbelt. Wyatt, however, was a Sunbelt stockholder and had voting rights to a majority of the stock. His affidavit, as well as that of Rogers, who was a Sunbelt stockholder and more involved in the transaction than Wyatt, would have raised a fact issue as to whether Sunbelt reasonably discovered the alleged DTPA violations within two years before suing. Summary judgment would not have been proper had the

court allowed Wyatt to amend the affidavits.

We reaffirm our decision sustaining point of error thirty-five and reversing and remanding those issues to the trial court.