**Rosa Maria GARCIA, Appellant,**

v.

**Philip J.A. WILLMAN, M.D. Appellee.**

No. 13–97–928–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 26, 1999.

Rehearing Overruled Nov. 18, 1999.

Cage Wavell, Corpus Christi, Donald B. Edwards, Craig S. Smith, Smith & Edwards, Corpus Christi, for Appellant.

Ronald B. Brin, Thomas F. Nye, Linda C. Breck, Brin & Brin, Corpus Christi, David Walsh, Corpus Christi, for Appellee.

Before Chief Justice SEERDEN and Justices HINOJOSA and YAÑEZ.

## OPINION

Opinion by Justice YAÑEZ.

Appellant Rosa Maria Garcia sued Dr. Philip J.A. Willman for medical malpractice under the Texas Medical Liability and Insurance Improvement Act.[1] She now raises five issues in her appeal from a summary judgment granted in Dr. Willman's favor. We reverse.

On June 7, 1995, Dr. Michael J. Burke performed surgery on Garcia to remove a brain aneurysm. During her post-operative stay in the hospital, she received Dilantin, an anticonvulsant drug prescribed to prevent seizures. A potential side effect associated with Dilantin is Stevens–Johnson syndrome, a skin disorder capable of producing a severe rash and other complications. Garcia first received Dilantin intravenously on June 7, and on June 11 she began taking Dilantin orally, three times daily.

---

1. TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.1999).

Dr. Willman first saw Garcia on June 20 while on rounds covering for Dr. Burke. The next time he saw her was on June 27. His affidavit in support of summary judgment describes his involvement with Garcia on that day:

> At that time, I also checked her post-operative CT scan and found no increase in any amount of hydrocephalus. I felt the patient was ready to be discharged home, and left orders for her to be discharged and to see Dr. Burke at the office the following week, as per discussion with Dr. Burke earlier that day. That discharge order was later rescinded by Dr. Burke. At approximately 2:00 p.m. that same day, I gave telephone orders to the nurses that I had reviewed the CT scan and it was ok for the patient to go home, will call prescription for Dilantin and to continue home medications. Again, at approximately 9:00 p.m. that evening, I gave additional telephone orders to the nurses to discontinue the patient's central line, and to apply Mycostatin to the patient's perineal area three times a day as she was complaining of itching in that area.

Dr. Willman's final involvement with Garcia came on the following day, June 28, 1995, when he was called by the nursing staff and told that Garcia was complaining of itching. At this time, he directed the nurse to give her Benadryl.

Later that same day, Dr. Burke examined Garcia and issued a discharge order in conjunction with prescriptions for Benadryl and Tylenol. In Dr. Burke's discharge summary, he discontinued the Dilantin, and per his deposition testimony, he explained to Garcia the reasons for discontinuing the Dilantin. Garcia denies that anyone ever informed her to stop taking Dilantin.

A few days later, after being discharged from Spohn Hospital, Garcia was admitted to another hospital and diagnosed with Stevens–Johnson syndrome. Consequently, she brought suit against Dr. Willman, Spohn Hospital, and others alleging negligence, gross negligence, and negligence *per se*. The basis of her claim against Dr. Willman is that she developed Stevens–Johnson syndrome as a result of taking the Dilantin that he prescribed.

Garcia's claim against Dr. Willman is governed by the Medical Liability and Insurance Improvement Act of Texas. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i (Vernon Supp.1999). As a procedural requirement to maintain a suit under 4590i, a plaintiff is required to file an expert report within a certain period after the lawsuit is filed. Tex.Rev.Civ. Stat. Ann. art. 4590i, §§ 13.01(a)(3), 13.01(k) (Vernon Supp. 1999). To comply with the statute, Garcia filed the affidavit of Dr. Don William Penney, dated November 26, 1996. Dr. Penney's affidavit states that Dr. Willman, the hospital, and others fell below the standard of care in treating Garcia because they failed to diagnose and treat Garcia's condition prior to prescribing Dilantin and discharging her from the hospital.

Dr. Willman filed a motion for summary judgment almost one year later on October 2, 1997, which included his own expert witness affidavit denying that he strayed from the acceptable standard of care in treating Garcia. Garcia countered with deposition excerpts, medical records, and two expert witness affidavits from Dr. Penney. The first affidavit was the same one used to comply with the procedural requirements of article 4590i. Dr. Penney's second affidavit, titled "Supplemental Affidavit," discusses his review of several documents since the previous affidavit, and concludes that a reasonable and prudent doctor in Dr. Willman's situation would have called the pharmacy and canceled the prescription for Dilantin before Garcia was discharged from Spohn Hospital.

Dr. Willman objected to both of Dr. Penney's affidavits used in Garcia's response, arguing that Garcia was statutorily prohibited from using either and both should be struck. As a consequence, he claimed that Garcia had failed to contro-

vert his expert medical testimony with that of another expert, thereby entitling him to summary judgment. The trial court agreed, struck both affidavits, and granted Dr. Willman's motion for summary judgment along with his motion to sever. This appeal followed.

■ In her second issue, appellant argues that an affidavit submitted for purposes of complying with section 13.01 of article 4590i may be used as summary judgment evidence.

Dr. Willman's objection to Dr. Penney's initial affidavit was based upon section 13.01(k) of the act which provides:

Notwithstanding any other law, an expert report filed under this section:

(1) is not admissible in evidence by a defendant;

(2) shall not be used in a deposition, trial, or other proceeding; and

(3) shall not be referred to by a defendant during the course of the action for any purpose.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(k) (Vernon Supp.1999). Dr. Willman argues that because the affidavit was initially submitted for purposes of qualifying as an article 4590i expert report, the clear statutory language of 13.01(k) prohibits Garcia from using it as summary judgment evidence. He also points out that the statute prevents him from being able to controvert the affidavit.

Garcia contends that Dr. Willman's interpretation of the statute creates an absurdity because a statute that requires a plaintiff to provide prima facie proof of a cause of action should not operate to later prevent the plaintiff from using that proof. Instead, Garcia claims that she should be allowed to use the affidavit as summary judgment evidence with the condition that once it is used, she will lose her right to designate Dr. Penney as a "consulting-only" expert and will be precluded from

raising section 13.01(k) as a ground for prohibiting the defendant from referring to the affidavit.

We note at the outset that our primary concern when interpreting statutes is to comply with the intent of the Legislature. Our first and best tool in ascertaining this intent is the language of the statute itself. When interpreting the intent and meaning of a statute, the court focuses on, and will follow, the plain language of the statute unless doing so leads to absurd and unintended consequences. *Schwenke v. State*, 960 S.W.2d 227, 230 (Tex.App.—Corpus Christi 1997, pet. denied); *Lundy v. State*, 891 S.W.2d 727, 729 (Tex.App.—Houston [1st Dist.] 1994, no pet.). If the statutory language is clear and unambiguous, we give the statute its common everyday meaning. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 80 (Tex. 1997); *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983).

Finding the language of section 13.01(k) to be clear and unambiguous, we conclude that the trial court properly struck Dr. Penney's first affidavit. It is undisputed that this document was originally filed under section 13.01 for purposes of complying with the procedural requirements of article 4590i. Therefore, Garcia could not use the report "in a deposition, trial, or other proceeding." *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(k) (Vernon Supp. 1999). Section 13.01(k) does not provide for any exceptions, and we will not attempt to tailor any that were not provided for by the Legislature.

■ Furthermore, we agree the trial court properly struck Dr. Penney's supplemental affidavit because, standing alone, it failed to meet the requirements of an expert report under article 4590i. *See* TEX. REV.CIV. STAT. ANN. art. 4590i, §§ 13.01(r)(6), 14.01(a) (Vernon Supp. 1999). Appellant's second issue is overruled.[2]

---

**2.** Whether or not Dr. Penney may continue to be used as an expert is not an issue before

this Court. We recognize, however, that under section 13.01(k), the exclusionary lan-

■ In her third issue, appellant contends that even if the affidavit was defective, the defect was a matter of form and she should have been given an opportunity to amend. We agree.

The rule of civil procedure that governs the use of affidavits in summary judgment proceedings provides that "[d]efects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." Tex.R. Civ. P. 166a(f).

Dr. Willman's objections to the affidavits in Garcia's response to the summary judgment were filed the day before the summary judgment hearing. On the day of the hearing, and after the trial court ruled that Dr. Penney's affidavits be struck, Garcia urged the court to grant "either leave or continuance to get another affidavit from him [Dr. Penney]. . . ." After this request was made, the trial court granted Dr. Willman's motion for summary judgment and severance, and signed an order on the same day. Garcia did not have an opportunity to amend the affidavits prior to the hearing and was not given an opportunity by the court after she requested it.

A similar situation was presented in *Wyatt v. McGregor*, 855 S.W.2d 5 (Tex. App.—Corpus Christi 1993, writ denied). There, the appellee asserted that the affidavits supporting appellant's response to the summary judgment were defective because the affiants failed to properly establish their competence and failed to state that the affidavits were made on personal knowledge. The objections were made at the summary judgment hearing and the appellant was not given the opportunity to amend (or refuse to amend) before the court granted the summary judgment. *Id.* at 17. We held that "parties must have the opportunity to amend defective affidavits before those defects are used to defeat

a summary judgment opponent." *Id.* at 18.

We find this holding applicable to the facts of this case. Dr. Willman's objections to Dr. Penney's affidavits were received the day before the summary judgment hearing, leaving Garcia without any opportunity to amend prior to the hearing. At the hearing, Garcia then requested permission from the court for "leave or continuance." The trial court should have provided Garcia the opportunity to amend prior to granting the summary judgment. Therefore, we sustain Garcia's third issue.

We need not decide whether the defective affidavits, had they been amended and made part of the summary judgment proof, would have precluded a summary judgment in Dr. Willman's favor. We do note, however, that without any type of medical expert testimony to controvert Dr. Willman's expert witness affidavit, Garcia would have been unable to defeat the summary judgment. *See Alvarez v. Anesthesiology Assoc.,* 967 S.W.2d 871, 881 (Tex. App.—Corpus Christi 1998, no pet.) (in a medical malpractice suit, the trier of fact must be guided by the opinion testimony of experts).

Based on our disposition of appellant's third issue, we conclude that the trial court erred in granting Dr. Willman's motion for summary judgment. Garcia's first point of error is sustained.

■ By her fifth issue, appellant claims the trial court should not have severed the cause of action against Dr. Willman from the remaining defendants. Rule of civil procedure 41 states, "Any claim against a party may be severed and proceeded with separately." Tex.R. Civ. P. 41. The court's severance order will not be disturbed on appeal except for an abuse of discretion. *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 682 (1956). The Supreme Court has recognized that severance after

guage applies only to "an expert report filed under this section" and not to the expert

himself.

summary judgment in an effort to expedite appellate review is not an abuse of discretion. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525–26 (Tex.1982).

At the conclusion of the summary judgment hearing, the trial court announced that Dr. Willman's motion to sever was granted. Garcia's counsel then stated, "So Dr. Willman is out on a summary judgment. May we get the Court to sign a copy of the order so that we can take it up?" The court responded affirmatively. Under these circumstances, we cannot say that the trial court abused its discretion. By granting the severance, the judgment became final and appealable, thereby allowing Garcia the benefit of this appeal. Appellant's fifth issue is overruled.

Appellant's fourth issue is not dispositive to this appeal, therefore, we need not address it. *See* TEX.R.APP. P. 47.1.

Accordingly, we reverse the summary judgment and remand to the trial court for further proceedings.