6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00033-CV
______________________________



IN RE:
BARBARA GOSS





                                                                                                                                            
                 
Original Mandamus Proceeding





                                                                                                                                            
                                           


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross



O P I N I O N
          Barbara Goss, the plaintiff below, has filed a petition for writ of mandamus asking
us to order the trial court to vacate its order granting Brookshire Grocery Company's motion
for new trial. She contends the grant is not valid because the trial court had lost plenary
power before it granted the motion. 
          The underlying lawsuit is a tort action by Goss against Brookshire in which the jury
awarded substantial damages in her favor. Following the jury's verdict, but before
judgment, Brookshire filed a combined motion for judgment notwithstanding the verdict,
and in the alternative, motion for new trial. A hearing was held on Brookshire's motions,
after which the trial court rendered judgment on the jury's verdict. Brookshire's motions
were denied by written order signed the next day.


 Brookshire later filed a much more
extensive motion for new trial, which the trial court ultimately granted. The question is
whether, when that order was finally issued, the trial court still had the plenary authority to
do so. We conclude that it did not.
          Mandamus is appropriate relief when a trial court issues an order after its plenary
power has expired, because such an order is void. In re Southwestern Bell Tel. Co., 35
S.W.3d 602, 605 (Tex. 2000). 
          The following timetable shows the relevant filings, hearings, and rulings:
          Brookshire files motion for judgment notwithstanding 
          the verdict and alternative motion for new trial:             12/03/2004
          Hearing on motions and judgment signed                     12/09/2004
          Order overruling motions signed:                                  12/10/2004
          Brookshire files second motion for new trial:                 01/07/2005
          Hearing on second motion for new trial:                        01/25/2005
          Order granting second motion for new trial signed:      02/01/2005

          The relevant plenary power provisions of Tex. R. Civ. P. 329b are as follows: (1) if
no motion for new trial is filed, the court has plenary power for thirty days after the
judgment is signed; (2) if a motion for new trial is filed and there is no formal ruling, it is
overruled as a matter of law seventy-five days after the judgment is signed; (3) if a motion
for new trial is filed, the court has plenary power over its judgment until "thirty days after
all such timely-filed motions are overruled, either by a written and signed order or by
operation of law, whichever occurs first." Under these provisions, a trial court retains
plenary power for thirty days after it rules, or for seventy-five days (when overruled as a
matter of law), plus thirty more. The motion in this case, partially titled "In the Alternative
Motion for New Trial" was overruled December 10, 2004. Goss contends the trial court lost
plenary power January 10, 2005; thus, the court was clearly without authority when it
granted Brookshire's second motion February 1, 2005. Brookshire responds with two
alternative arguments.
          Brookshire contends the initial motion entitled "Motion for Judgment Notwithstanding
the Verdict and in the Alternative Motion for New Trial" was not considered as such by the
trial court. Brookshire posits that the trial court understood that motion to be only a motion
for judgment notwithstanding the verdict and that Brookshire would later file a more
complete motion for new trial. Language suggesting that is what Brookshire contemplated
can be found in the motion itself:
In the event the court declines the relief requested in this motion and enters
a judgment, Brookshires intends to file a more comprehensive motion for
new trial raising all insufficiency and other complaints not addressed herein. 

          Comments made at the hearing by the trial court also support Brookshire's
argument:
realistically what's before the Court right now is whether or not the Court
should enter a judgment on the, on the verdict or a judgment notwithstanding
the verdict.

          Therefore, Brookshire argues, because the first motion was purely a motion for
judgment notwithstanding the verdict (and not a motion for new trial), the rules permitted
it to file its complete motion for new trial within the initial thirty-day time period. If correct,
then the standard seventy-five-day time period applied as started by the filing of that
complete (second) motion filed within thirty days of the signing of the judgment. Under this
argument, a timely motion was filed within thirty days, and because there was still an
outstanding and unruled-on motion pending, the court had the full seventy-five days from
judgment to rule. Thus, under this view, the order granting a new trial was valid.
          The language of the trial court's order, however, belies Brookshire's argument: 
On December 9, 2004, came on to be heard Defendant Brookshire
Grocery Company's Motion for Judgment Notwithstanding the Verdict and In
the Alternative Motion for New Trial and Plaintiff's Response to same. 
Having considered the pleadings and the evidence presented, and having
heard and considered the arguments of counsel, the Court finds that said
Motions are DENIED.

          Although the hearing on the first motion was mostly directed at a discussion of the
motion for judgment notwithstanding the verdict, it was not exclusively so. This was partly
because of an overlap in the requested relief and the reasons for that relief. The result is,
we cannot say conclusively that the court ruled solely on the motion for judgment
notwithstanding the verdict and that it did not consider the motion for new trial. Even if the
court did at one time have that intention, the judgment itself clearly and unambiguously
disposes of both motions, and to make such a decision was clearly within the authority of
the court. 
          Brookshire also argues that, at the hearing on the first motion, the trial court
impliedly granted it permission to file an amended motion for new trial. This argument is
supported by the transcription of the hearing where the trial court was informed of, and was
expecting, a much more extensive motion for new trial to be filed. In the context of a
discussion of whether there was any evidence to support the jury's verdict, the court made
these comments:
when [the judgment is] entered, I will look more carefully at the other points
that you have given me a heads up on at least.

                     . . . .
 
I will go ahead then and . . . enter the judgment so you can get a copy of that
and go ahead and proceed on then with the, with the motion for new trial.

          Arguably, the trial court did at least impliedly grant permission to file an amended
motion. Assuming that such permission can be granted by implication under these facts,
the remaining question is whether it would serve to extend the plenary authority of the trial
court. The Texas Supreme Court has held that it does not.
          In order for Brookshire to prevail, it must distinguish In re Dickason, 987 S.W.2d 570
(Tex. 1998). In that case, the Texas Supreme Court stated that, once the trial court
overrules a motion for new trial, the court retains plenary power for another thirty days, and
that "[f]iling an amended motion for new trial does not extend the court's plenary power." 
Id. at 571; see also In re T.G., 68 S.W.3d 171, 176 (Tex. App.—Houston [1st Dist.] 2002,
orig. proceeding).
          Brookshire argues that its position is nonetheless controlled by Rule 329b(e), which
provides that, if a timely motion for new trial is filed (and this one was filed within thirty days
of judgment), then the court retains plenary power until thirty days after the timely-filed
motion is overruled, either by written order or as a matter of law—whichever comes first.



          Brookshire argues that Dickason is distinguishable because it does not show that
the second motion for new trial was either timely filed or filed with the permission of the
court. Under its analysis, the critical distinction is whether the motion was timely filed with
permission of the court—and if it was, then Rule 329b(e) leaves plenary power with the trial
court until thirty days after that motion is overruled. 
          That argument is not persuasive. In Dickason, the court would have analyzed the
matter substantially differently had it been of the opinion that no timely motion was filed. 
The opinion is predicated on the assumption that a proper amended motion was before the
court—and yet concludes that the plenary time periods are exclusively based on the
original motion—not on the amended motion.
          We conclude the trial court acted outside the period of its plenary authority over its
judgment in granting the motion for new trial. We therefore conditionally grant the writ of
mandamus, and direct the trial court to vacate its February 1, 2005, order granting
Brookshire a new trial. 
          The writ will issue only if the trial court fails to comply.

                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      March 17, 2005
Date Decided:         March 25, 2005



judgment proof is incompetent; it is formal if the summary judgment proof is
competent, but inadmissible. Keeton v. Carrasco, 53 S.W.3d at 24; Mathis v. Bocell, 982
S.W.2d at 59. Strayhorn and Wadley also had the burden of obtaining a ruling on the
objection. Having failed to do so, they have waived consideration of this issue on appeal,
and the trial court was not barred from considering Aguam's affidavit on the ground that it
was also used as Trusty's expert report.

 Strayhorn and Wadley also contend Aguam's affidavit is incompetent because
Trusty failed to timely designate him as a testifying expert in compliance with the trial
court's agreed scheduling order. They do not provide any authority for their position, and
for that reason, their contention is improperly briefed. Tex. R. App. P. 38.1(h).

 Moreover, assuming the failure to timely designate a testifying expert would bar
consideration of that expert's affidavit as summary judgment proof, such a failure is a
defect of form to which a party must object and obtain a ruling to preserve error. See
Lection v. Dyll, 65 S.W.3d at 703 (characterizing as a defect in form a failure to file
summary judgment proof within seven days of the hearing). 

 Here, Trusty's failure to designate Aguam as his testifying expert did not make his
affidavit incompetent, but merely inadmissible on proper objection. Thus, it was at most
a defect of form. Because Strayhorn and Wadley did not obtain a ruling on their objections
to Aguam's affidavit, Trusty's failure to designate Aguam as his testifying expert did not bar
the trial court from considering the affidavit as summary judgment proof.

 Strayhorn and Wadley also contend Aguam's affidavit was incompetent because
he was not qualified to give an opinion regarding the conduct of Strayhorn or the nurses
at Wadley and because he failed to articulate the applicable standards of care for either
a reasonably competent cardiologist or a reasonably competent nurse in treating someone
in Trusty's condition. Wadley raised both these objections in the trial court in its motion to
strike Aguam's affidavit, but did not obtain a ruling on either objection. Strayhorn did not
raise his objection regarding Aguam's purported failure to state the standard of care and
did not obtain a ruling regarding his objection to Aguam's qualifications.

 Nevertheless, we will consider both of these contentions for the first time on appeal. 
An objection to the failure of an expert's affidavit to disclose the expert's qualifications goes
to the substance of the affidavit. Crow v. Rockett Special Util. Dist., 17 S.W.3d 320, 324
(Tex. App.-Waco 2000, pet. denied); see also Cain v. Rust Indus. Cleaning Servs., Inc.,
969 S.W.2d 464, 467-68 (Tex. App.-Texarkana 1998, pet. denied). This is true because,
without proper qualifications, an expert's opinion merely states a legal conclusion. See
Cain v. Rust Indus. Cleaning Servs., Inc., 969 S.W.2d at 467-68. An affidavit that is
conclusory, or that merely expresses a legal conclusion, is substantively defective and may
be raised for the first time on appeal. Id. at 467.

 Moreover, because the standard of care is a necessary element in proving a
medical negligence claim, see Woodruff v. Wright, 51 S.W.3d 727, 734 (Tex.
App.-Texarkana 2001, pet. denied), the failure of Aguam's affidavit to disclose the
standard of care is a substantive defect that can be raised for the first time on appeal. 
Without such proof, Trusty cannot establish his cause of action.

 In his affidavit, Aguam recites that he is a licensed and practicing board-certified
surgeon in the State of Texas; that he reviewed the medical records of the doctors and
hospitals that treated Trusty; that he has "knowledge of the accepted standards of care
. . . applicable to . . . physicians . . . for the diagnosis, care and treatment" of Trusty's
condition; that Trusty had a coronary arteriogram performed through the brachial artery in
his left arm; that Trusty's injury occurred after his arteriogram, which was "uneventful"; that
blood "oozing" from the puncture site "made its way into the subcutaneous tissue and
compartments of [Trusty's] forearm," causing his anterior interosseous nerve to become
"really compressed" and to develop ischemia; that Strayhorn "failed to meet the applicable
standard of care because he, as the cardiologist, should have consulted a vascular
surgeon to perform an open arteriotomy to introduce the catheter and to thereafter close
with sutures to secure better hemostasis rather than relying on pressure dressing to stop
the bleeding"; that Trusty developed "Reflex Sympathetic Dystrophy" that was caused by
Strayhorn's substandard care; and that the injury/disability was "further exacerbated by the
failure of the non-physician health care providers to appropriately provide the pressure at
[Trusty's] left brachial artery and further by [Strayhorn's failure] . . . to recognize the
seriousness of this injury immediately subsequent to the coronary arteriogram." Aguam's
curriculum vitae, which was attached to his affidavit, shows that his practice is in thoracic,
vascular, and general surgery, and that he did a two-year residency in thoracic and
cardiovascular surgery between 1969 and 1971. 

 Summary judgment was appropriate with respect to Trusty's claim against Wadley. 
Aguam's affidavit does not disclose that he is familiar with the standard of care for a nurse
treating a patient after a coronary arteriogram. In fact, Aguam states only that he is familiar
with the standard of care applicable to physicians treating a patient in Trusty's condition. 
Further, Aguam's affidavit does not disclose that he is qualified to render an opinion on the
conduct of nurses treating a patient in Trusty's condition. Therefore, Aguam's affidavit
does not provide summary judgment proof of Wadley's negligence.

 Summary judgment was inappropriate with respect to Trusty's cause of action
against Strayhorn. Aguam states he is familiar with the standard of care applicable to
physicians treating a patient in Trusty's condition. He further states Strayhorn should have
consulted a vascular surgeon to perform an open arteriotomy to introduce the catheter into
the artery, should have closed the puncture site with sutures rather than relying on
pressure dressing, and should have recognized the injury immediately after the
arteriogram. Taken together, Aguam's statements provide the standard of care applicable
to a physician treating a person in Trusty's condition.

 Strayhorn contends that, because Aguam is not a cardiologist, he is not qualified to
render an opinion regarding Strayhorn's conduct in performing the arteriogram. These
allegations of negligence do not center around the performance of the heart
catheterization, but instead center around the condition of the artery before the catheter
was introduced, the proper procedure for introducing the catheter under the circumstances,
and the appropriate post-procedure treatment. These are areas on which a vascular
surgeon is qualified to render an opinion. Therefore, Aguam's affidavit provided some
evidence of Strayhorn's negligence. Summary judgment was inappropriate on Trusty's
claim against Strayhorn. 

 The judgment is affirmed in part as to Trusty's claim against Wadley. The judgment
is reversed as to Trusty's claim against Strayhorn. That part of the action is severed and
remanded to the trial court for further proceedings on Trusty's claim against Strayhorn.



 William J. Cornelius

 Justice*


*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.


Date Submitted: July 24, 2002

Date Decided: September 13, 2002


Publish
1. Christine Trusty's claim was based on loss of consortium, which is derivative to
Jodie Trusty's negligence cause of action.
2. Billy D. Parsons, M.D., was also included in the notice of appeal, but was nonsuited 
before final judgment was rendered in the case.
3. The statute prohibits the specified use of or reference to the expert report itself. 
It does not prohibit the expert who makes the report from testifying as an expert witness
at trial. See Tex. Rev. Civ. Stat. Ann. art. 4590i, ǧ 13.01(r)(6), 14.01(a) (Vernon Supp.
2002); Garcia v. Willman, 4 S.W.3d 307, 310 n.2 (Tex. App.-Corpus Christi 1999, no pet.).