David **KEETON** and Peggy Sue Keeton, Appellants,

v.

Arnulfo T. **CARRASCO**, M.D., Gerald Greenfield, M.D., and Gerald Greenfield, M.D., P.A., Appellees.

No. 04–99–00582–CV.

Court of Appeals of Texas, San Antonio.

March 7, 2001.

Rehearing Overruled June 22, 2001.

Paul Schorn, Rodriguez & Schorn, P.C., Austin, Thomas F. Nye, Linda C. Breck, Brin & Brin, P.C., Corpus Christi, for Appellant.

J. Kevin Oncken, Tyler Scheuerman, Uzick & Oncken, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, SARAH B. DUNCAN, Justice.

## OPINION

PHIL HARDBERGER, Chief Justice.

David Keeton and Peggy Sue Keeton (the "Keetons") appeal summary judgments granted in favor of Arnulfo T. Carrasco, M.D. ("Carrasco") and Gerald Greenfield, M.D. and Gerald Greenfield, M.D., P.A. (collectively "Greenfield"). Summary judgment was granted in favor of Carrasco on limitations grounds based on the Keetons' failure to exercise due diligence in serving Carrasco. The Keetons contend summary judgment in favor of Carrasco was improper because Carrasco was properly served within the limitations period or, in the alternative, the Keetons exercised due diligence in serving Carrasco. Summary judgment was granted in favor of Greenfield when the trial court sustained Greenfield's objections to the expert evidence proffered by the Keetons. The Keetons contend summary judgment in favor of Greenfield was improper because: (1) the trial court should have permitted the Keetons to file an

amended affidavit; (2) the Keetons' expert was properly qualified; and (3) the amended affidavit raised questions of fact which precluded summary judgment. We reverse the trial court's summary judgments and remand the underlying causes to the trial court for trial.

## A. KEETONS V. CARRASCO

### BACKGROUND

In February of 1993, David Keeton injured his back when he slipped and fell. In June of 1996, Carrasco implanted a spinal cord stimulator in David's back. David began experiencing increasing pain after the surgery, including pain in his right index finger and hand. Carrasco continued to reassure David that the pain was unrelated to his surgery, and that he did not have an infection.

In August of 1996, Carrasco referred David to Greenfield. Greenfield examined David and recommended that David be prescribed medication for a possible allergic reaction to material in the implanted stimulator. On August 21, 1996, the wound on David's back burst open. Carrasco performed tests on samples taken from the wound and informed David that he had developed a staph infection.

David had surgery on his hand and was discharged on September 13, 1996. A second surgery was performed in January of 1997 in which David's right index finger was removed back to the first joint. Finally, in June of 1998, a third surgery was performed in which David's right index finger was amputated.

On July 3, 1998, the Keetons retained counsel, who sent a letter to Carrasco dated July 21, 1998, notifying him of the Keetons' claim. The letter tolled limitations for seventy-five days. On September 29, 1998, the Keetons timely filed suit against numerous defendants, including Carrasco and Greenfield. Citation directed to Carrasco was issued on September 30, 1998. The citation was served by a private process server by certified mail on October 23, 1998.[2] The letter was addressed to:

Arnulfo T. Carrasco, M.D.

Reg. Agent

Richard J. Fetchick, M.D.

2833 Babcock Rd., Ste. 507

San Antonio, TX 78229

The return receipt was signed by "Laura J. Garcia." The officer's return was verified on November 6, 1998.

When no answer was filed by Carrasco,[3] counsel for the Keetons investigated the initial service. Based on counsel's concern that Carrasco might argue the first service was invalid, counsel caused a second citation to be issued on January 5, 1999. The citation was personally served on Carrasco on February 2, 1999.

Carrasco filed an answer and asserted limitations as an affirmative defense. Carrasco then moved for summary judgment, claiming the Keetons' initial attempt at service was invalid because the return receipt was not signed by the addressee; therefore, Carrasco was not served until sixty-eight days after the limitations period expired. The Keetons responded and filed a cross-motion for summary judgment, asserting that they exercised rea-

---

2. Carrasco's brief states that the parties dispute whether the date of delivery was October 2, 1998, or October 23, 1998. As the Keetons point out, however, the certified mail receipt is file stamped October 22, 1998, and the date of delivery on the return receipt could not have been prior to that date.

3. The affidavit of the Keetons' counsel states that the answer date was December 14, 1998. Carrasco's brief states that the answer date would have been November 16, 1998, assuming service was on October 23, 1998.

**18**

sonable diligence in obtaining service as a matter of law. The trial court granted Carrasco's motion, and the Keetons timely appealed.

### Standard of Review

■ "Bringing suit" within a limitations period involves both filing a petition within the applicable time period and exercising due diligence in serving the defendant with citation. *See Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990); *Rodriguez v. Tinsman & Houser, Inc.*, 13 S.W.3d 47, 49 (Tex.App.—San Antonio 1999, pet. denied). When the plaintiffs file a petition within the limitations period, but fail to serve the defendant until after the statutory period has run, the suit is time barred unless it is shown that the plaintiffs exercised diligence in effecting service. *See Gant*, 786 S.W.2d at 260; *Rodriguez*, 13 S.W.3d at 49.

■ The existence of due diligence is usually a fact question determined by a two-prong test: (1) whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances; and (2) whether the plaintiff acted diligently up until the time the defendant was served. *Rodriguez*, 13 S.W.3d at 49. A lack of diligence can be found as a matter of law only if: (1) no valid excuse for lack of service is offered; or (2) the lapse of time and the plaintiff's acts or inaction conclusively negate diligence. *Id.* A lack of diligence can be found even in the face of an offered explanation if that explanation affirmatively establishes a lack of reasonable diligence. *Id.*

Texas courts have consistently held that unexplained delays of five and six months in procuring issuance and service of citation constitute a lack of due diligence as a matter of law. *See Southern County Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 462 (Tex.App.—Corpus Christi 2000, no pet.)

(citing six cases in which five or six months delays held to constitute lack of due diligence as a matter of law). However, the period of the delay does not appear to be the critical factor. *Compare Curtis v. Gibbs*, 511 S.W.2d 263, 268 (Tex.1974) (twenty-six day delay did not show lack of diligence as a matter of law) *and Edwards v. Kaye*, 9 S.W.3d 310, 315 (Tex.App.—Houston [14th Dist.] 1999, pet. filed) (evidence which included eighty-four day delay held insufficient to show lack of due diligence as a matter of law) *with Rodriguez*, 13 S.W.3d at 51–52 (lack of due diligence shown as a matter of law even though delay was only twenty-five days) *and Perkins v. Groff*, 936 S.W.2d 661, 668 (Tex. App.—Dallas 1996, writ denied) (summary judgment upheld based on twenty-one day delay where no response was filed to offer explanation).

■ To obtain summary judgment on the basis that citation was not served within the applicable limitations period, the movant must show that, as a matter of law, diligence was not used to effectuate service. *Id.* In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Id.* Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in its favor. *Id.*

### Discussion

Carrasco asserts that the latest date limitations began to run was September 13, 1998, the date David was discharged from the hospital. Using this start date, and taking into account the 75 day tolling period, limitations ran on November 28, 1998.

The Keetons initially contend that the service of the first citation on November 6,

1998, was valid because there was no evidence that the person who signed the return receipt was not Carrasco or Carrasco's agent. In support of this contention, the Keetons rely on a case addressing proper service on a bank. *See Pleasant Homes, Inc. v. Allied Bank of Dallas*, 776 S.W.2d 153, 154 (Tex.1989). In that case, the Supreme Court rejected the court of appeals' conclusion that the record must affirmatively show that the individual who signed the return receipt as vice-president of the bank was in fact a vice-president. *See id.* The court held, "A return showing delivery of process to a vice-president or president, as authorized by applicable statute, is prima facie evidence that the person served is in fact the officer as designated." *Id.* In this case, Carrasco is not a bank for which the statute permits service on a particular agent. The Keetons' petition states that Carrasco is an individual resident of Bexar County.

■ A return of a citation served by registered or certified mail must contain the return receipt with the addressee's signature. *See* Tex.R.Civ.P. 107. If the return receipt is not signed by the addressee, the service of process is defective. *See Webb v. Oberkampf Supply of Lubbock, Inc.*, 831 S.W.2d 61, 64 (Tex.App.—Amarillo 1992, no writ) (return receipt not signed by addressee); *Pharmakinetics Laboratories, Inc. v. Katz*, 717 S.W.2d 704, 706 (Tex.App.—San Antonio 1986, no writ) (return receipt signed by Charlotte Young but addressee was Pharmakinetics Laboratories, Inc. c/o Steven Woodman). In this case, the return receipt was signed by Laura J. Garcia. Laura J. Garcia was not the addressee; therefore, the service of process was defective.

■ Even if the first citation is found invalid, the Keetons further contend that summary judgment was improper because they used due diligence in serving Carras-

co with the second citation on February 2, 1999, which was 68 days after limitations had run. Carrasco relies on the case law that holds that an attorney's misplaced reliance on his process server does not constitute due diligence as a matter of law. *See Jimenez v. County of Val Verde*, 993 S.W.2d 167, 168 (Tex.App.—San Antonio 1999, pet. denied); *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 590 (Tex.App.—Corpus Christi 1994, no writ). However, the facts in those cases are distinguishable from the facts in the instant case.

In *Jimenez*, the plaintiff relied on the process server's misrepresentation that service had been accomplished for eight months until a legal assistant finally checked the file, noticed that no answer had been filed, and discovered that the defendant was never served. 993 S.W.2d at 169 (López, J., dissenting) (providing more detailed rendition of facts). In *Gonzalez*, the plaintiff relied on the process server's misrepresentation that service had been "taken care of" for fourteen months. 884 S.W.2d at 590. The court in *Gonzalez* noted that if the attorney had been diligent, "he would have noticed that appellees had not filed an answer for over fourteen months after he filed the amended petition. Also, he could have easily checked with the court clerk to verify service upon appellees." *Id.*

In this case, the Keetons' attorney did not rely upon a verbal misrepresentation. Instead, an officer's return was filed with a return receipt attached. The only deficiency was that the return receipt was not signed by the addressee. Several of the other return receipts attached to the officer's returns for other defendants are signed by individuals other than the addressees. Those defendants waived that procedural deficiency by filing answers. The execution of a green card by a mem-

ber of a doctor's office staff, rather than by the doctor, is not an extraordinary occurrence. In view of this common occurrence, an ordinary, prudent attorney may not suspect a problem with a return receipt signed by an individual other than the addressee until an answer is not filed. As the court stated in *Gonzalez,* one means by which a diligent attorney could determine that a problem with service exists is by noticing whether or not an answer is timely filed. 884 S.W.2d at 590. Unlike *Gonzalez,* where the attorney failed to notice the absence of an answer for 14 months, and *Jimenez,* where the attorney failed to notice the absence of an answer for eight months, the attorney in the instant case immediately noticed when the answer was not filed by the answer date as he calculated that date.

Although the Keetons' attorney appears to have miscalculated the answer date, resulting in a one month delay in checking the file to determine the reason for Carrasco's failure to answer, this involved more of a miscalculated effort due to inadvertence rather than inactivity. In *Rodriguez,* this court drew a distinction between those two scenarios, as follows:

> The instant case, however, unlike *Hodge, Valdez,* and *Saenz,* does not involve miscalculated attempts to effect service that, due to miscommunication or inadvertence, were not discovered until after the expiration of the limitations period. Rather, the instant case involves *inactivity* or complete failure to attempt service that was due to miscommunication. While the former scenarios may involve fact issues on diligence, the later scenario does not.

13 S.W.3d at 51.

Once the answer date passed, the Keetons' attorney actively investigated whether the initial service was proper. This investigation was commenced sixteen days after the limitations period had passed. After concluding his investigation, the Keetons' attorney caused a second citation to be issued on January 5, 1999, and the record shows that the citation and petition were delivered on the same day to a different process server than the one who initially attempted service. The process server personally served Carrasco twenty-eight days later, on February 2, 1999. Resolving all inferences and doubts in favor of the Keetons, these efforts raise a genuine issue of material fact as to the existence of due diligence which should be resolved by a jury not by the court as a matter of law.

### B. KEETONS V. GREENFIELD PROCEDURAL HISTORY

On July 22, 1999, Greenfield filed a motion for summary judgment under traditional grounds, alleging that he was entitled to judgment as a matter of law because he did not breach the applicable standard of care and did not proximately cause David's injuries. In the same motion, Greenfield argued that he was entitled to a no-evidence summary judgment, as there was no evidence that Greenfield's conduct proximately caused David's injuries.

Greenfield attached his own affidavit in support of his motion. The affidavit states that Carrasco referred David to Greenfield for examination of the spinal cord stimulator implantation wound site, with an eye towards possible infection of that wound site, based on David's complaints of pain in the neck and shoulder region. Greenfield received Carrasco's follow-up examination records for July 29, August 1, and August 12, as well as a copy of the results of blood work requested by Carrasco. Greenfield reviewed the "back questionnaire" completed by David at his office. Greenfield examined David, and based on the exami-

nation, the blood work, and x-rays, determined there was no evidence of infection. Greenfield contacted Carrasco and discussed the possibility that David was suffering from an allergic reaction to one or more of the materials in the stimulator. Greenfield suggested that David be prescribed Benadryl and continue to be followed by his primary care physician. Greenfield stated that David never mentioned any complaint regarding his finger. If David had mentioned such a complaint, Greenfield stated that he would have referred him back to Carrasco. Since there was no evidence of any infectious process at David's implantation wound site, Greenfield would not have concluded that a discolored finger tip would be the result of a migratory embolus associated with post operative infection as was alleged by the Keetons. Greenfield stated that the standard of care for a consulting orthopedic surgeon would require the consulting orthopedic surgeon to obtain a complete history. If the patient is referred for consultation regarding a specific condition, the consulting orthopedic surgeon should primarily focus on that condition. The standard would require the consulting orthopedic surgeon to examine the patient and review lab work and film. If the medical history, physical examination, lab work, and films are inconsistent with an infectious process at the site in question, the consulting orthopedic surgeon should consider other possible causes of the patient's complaints, such as an allergic reaction. Once the consultation concludes, the consulting orthopedic surgeon is not required to see the patient again unless another consultation is requested. Based on this standard, Greenfield denied that he breached the standard of care and further stated that the care and treatment he rendered met and/or exceeded the appropriate medical standard of care and nothing Greenfield did or failed to do proximately caused or contributed to cause the thrombosis in David's hand or any other damage.

On August 17, 1999, the Keetons filed a response to Greenfield's motion, attaching the affidavits of David, David's wife, and their expert, Dr. Greenspan. The expert affidavit is entitled, "Affidavit of Dr. Joseph Greenspan, M.D. Concerning Dr. Gerald Q. Greenfield, M.D., Pursuant to Art. 4590i" and was signed and filed approximately one month prior to Greenfield's summary judgment motion. The affidavit was filed in response to the trial court's order on Greenfield's pretrial objection to qualification of expert witness and motion to strike and motion to dismiss for want of prosecution. The order decreed that the expert reports authored by Greenspan were insufficient as they pertained to Greenfield. The order permitted the Keetons to amend the report or file additional reports on or before June 18, 1999, or the claims asserted by Greenfield would be dismissed with prejudice. The remainder of the motion was denied. The affidavit was filed on June 17, 1999.

David and his wife's affidavits state that David's wife filled out the back questionnaire, and they did not mention the problem with David's hand on the written form because it did not request that information. When the Keetons met with Greenfield, they told him about the redness and tenderness in David's abdominal area that had persisted in the weeks following the implantation and about the fluid that had seeped from the wound site. David showed Greenfield the fingers on his right hand, which were dark purple in color, swollen, cool to the touch, and very tender. The Keetons told Greenfield that the discoloration and pain in David's hand did not begin until the weeks following the surgery and after the wound site became painful and inflamed and began seeping fluid. The Keetons specifically asked

Greenfield if David's back was infected. Greenfield told the Keetons that he thought it was an allergic reaction, not an infection. The Keetons stated that they told Greenfield David's abdominal wound site was red, warm to the touch, very tender, and had been seeping fluid in the 24 hours before the visit. The bandage removed by Greenfield was stained with fluid.

Greenspan's affidavit states that his practice focuses on physical medicine, rehabilitation, and pain management. The field of physical medicine and rehabilitation includes treatment of patients with chronic back pain, including implantation of spinal cord stimulators and post-operative care. Greenspan often consults with, and works hand in hand with, neurosurgeons, orthopedic surgeons, anesthesiologists, and others who implant spinal cord stimulators. Greenspan has participated in the implantation of spinal cord stimulators and has treated patients following the implantation of such devices. He is familiar with the standards applicable to post-operative care of patients who have spinal cord stimulators surgically implanted. Such patients must be closely monitored for signs of infection, and any infection must be treated aggressively. The duty to recognize and aggressively treat post-operative infections is not peculiar to any specialty but is common to all physicians. Greenspan concludes that Greenfield breached the standard of care by filing to diagnose and treat David's infection when David had painful and seriously discolored fingers during his office visit in addition to a surgical site that was discolored, and had been painful, inflamed, and was seeping fluid. Greenfield should have considered that the finger problem may be the result of a migratory embolus. Greenspan stated that this breach of the standard of care caused David tremendous pain, allowed his infection to worsen and

his condition to deteriorate, ultimately resulting in David's loss of his index finger.

On August 24, 1999, the day of the summary judgment hearing, Greenfield filed a motion to strike and reply to the Keetons' response. Greenfield objected to Greenspan's affidavit on the following three grounds: (1) article 4590i prohibited the use of the affidavit; (2) Greenspan is not qualified to testify regarding an orthopedic surgeon's standard of care; and (3) the affidavit failed to properly address the issue of proximate causation, thereby failing to controvert Greenfield's summary judgment evidence.

At the hearing on August 24, 1999, the Keetons' attorney objected to the trial court hearing Greenfield's motion to strike based on late notice. Greenfield's counsel responded that the rules do not contain a deadline for the movant's reply to the nonmovant's response. The trial court postponed the hearing until August 27, 1999.

On August 26, 1999, the Keetons filed a notice of filing of affidavit of Dr. Joseph Greenspan, M.D. The affidavit was the same as the one previously filed except the phrase "pursuant to art. 4590i" was removed from the caption. Greenfield filed an objection to the notice of filing, contending that the affidavit was not filed seven days prior to the summary judgment hearing. The Keetons filed a motion to shorten the time to file the affidavit, or, in the alternative, the Keetons requested the trial court to continue the hearing for at least seven days so that the affidavit would be timely filed. Greenfield filed a response to the motion to shorten time, contending it was untimely filed and should not be considered.

After hearing the argument of counsel, the following exchange occurred between the trial judge and the attorneys:

THE COURT: My question to you is I'm seriously wondering how this particular doctor could be liable for anything. You may have some other doctors that are liable, but I'm questioning whether this doctor is liable.

MR. SCHORN: Yes, sir. I understand. And that's really the argument I want to get to, the underlying substantive—

THE COURT: I know. That's what I'm looking at. I deny the motion to shorten time. But I don't see how you can escape a motion for summary judgment under the circumstances of this case as far as Dr. Greenfield is concerned. I'm not talking about the other doctors. I don't know anything about the rest of them.

MR. SCHORN: I understand. I'm sorry did the Court rule on the motion to shorten time?

THE COURT: Yes. I denied the motion to shorten time.

MR. SCHEUERMAN: Then, Your Honor, we would move that based on the absence of any summary judgment evidence that we be granted summary judgment on this case.

THE COURT: Somebody else is going to have to rule on that. I'm going to grant the motion for summary judgment as far as Dr. Greenfield is concerned.

The trial court's order states that Greenfield's objections to the summary judgment evidence "are sustained prior to proceeding with the merits of the motion for summary judgment and severance." The order then grants the motion for summary judgment.

### STANDARD OF REVIEW

■■■ A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.— San Antonio 1998, pet. denied). We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Id.* A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id.* More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

■■■ In a traditional summary judgment, the movant has the burden to establish, as a matter of law, that there are no genuine issues of material fact concerning one or more of the essential elements of the plaintiffs' claims. *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex.1999). When reviewing a summary judgment, we assume that all evidence favorable to the nonmovant is true. *Id.* We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Id.* Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a fact issue. *Id.*

■■■ In this case, the trial court's order does not recite the grounds on which summary judgment was granted. A party appealing from a summary judgment that does not recite the grounds on which it is granted assumes the burden of pointing the appellate court to competent summary judgment evidence in the record establishing that none of the independent grounds

the motions asserted are sufficient to support the judgment. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). Consequently, we must affirm if any of the motion's grounds are meritorious. *See id.*

Before reaching the merits of the grounds asserted in the summary judgment motion, we must first consider whether the trial court erred in granting Greenfield's objections to Greenspan's affidavit.

### 4590i

Article 4590i, section 13.01(k) prohibits an expert report filed under section 13.01 from being used in a deposition, trial, or other proceeding. TEX.REV.CIV.STAT.ANN. art. 4590i, § 13.01(k) (Vernon Supp.2000); *see also Garcia v. Willman,* 4 S.W.3d 307, 309–311 (Tex.App.—Corpus Christi 1999, no pet.) (*holding affidavit filed in compliance with section 13.01 properly struck from being considered as summary judgment evidence*). Accepting that Greenfield made a proper objection to the use of the affidavit filed under section 13.01, the Keetons argue that the trial court should have granted their motion for leave to file an amended affidavit or their motion for continuance to file the amended affidavit.

In *Garcia v. Willman,* the plaintiff filed a response to a motion for summary judgment, attaching the expert witness affidavit previously filed to comply with section 13.01. 4 S.W.3d at 309. The defendant argued that the plaintiff was statutorily prohibited from using the affidavit. *See id.* The trial court agreed and struck the affidavit. *See id.* at 310. On appeal, the Corpus Christi court held that the use of an affidavit in violation of section 13.01(k) is a defect in the matter of form, and the plaintiff should have been given the opportunity to amend. *See id.* at 311. Because the trial court failed to give the plaintiff an opportunity to amend the affidavit, the Corpus Christi court reversed the summary judgment. *See id.* In its analysis, the Corpus Christi court relied on *Wyatt v. McGregor,* 855 S.W.2d 5, 17–18 (Tex. App.—Corpus Christi 1993, writ denied). In *Wyatt,* the court held that a party must be given the opportunity to amend an affidavit which is defective because the affiants failed to properly establish their competence and failed to state the affidavit was made on personal knowledge. *See id.* at 17.

Greenfield responds to the Keetons argument, asserting that the Corpus Christi court summarily determined that the defect was one of form without any analysis or legal authority to support its finding. Greenfield argues that the objection to the use of an expert's affidavit under section 13.01(k) is not an objection to the form or the substance but is an absolute statutory prohibition that the Keetons should not be permitted to cure. Alternatively, Greenfield argues that the prohibition is against the use of the content of the report not its form.

Defects in the form of affidavits are not grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity but refusal to amend. *See* TEX.R.CIV.P. 166a(f). A defect is substantive if the evidence is incompetent, and it is formal if the evidence is competent but inadmissible. *See Mathis v. Bocell,* 982 S.W.2d 52, 60 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Greenspan's affidavit is competent evidence that section 13.01(k) renders inadmissible; therefore, it contains a defect in form. If Greenfield's alternative assertion were correct, an expert who provides the report used by the plaintiff to comply with section 13.01 could never provide the content of that report in another form for use in opposition to a summary judgment. Section 13.01(k) only prohibits the use of

the "expert report" filed under section 13.01. Section 13.01(k) does not prohibit the expert who provides that report from providing another report for other purposes. Because the defect in Greenspan's affidavit was one of form, the trial court erred in depriving the Keetons of the right to amend their affidavit pursuant to rule 166a(f).

## QUALIFICATIONS

 We review the trial court's decision to strike an expert's affidavit for an abuse of discretion. *See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718 (Tex.1998); *Blan v. Ali,* 7 S.W.3d 741, 744 (Tex.App.—Houston [14th Dist.] 1999, no pet.). We will find an abuse of discretion only if the trial court acted without reference to any guiding rules and principles. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997); *Blan,* 7 S.W.3d at 744. We may not, however, substitute our opinion for that of the trial court's. *United Blood Services v. Longoria,* 938 S.W.2d 29, 31 (Tex.1997).

 The party offering an expert's testimony bears the burden to prove the witness is qualified. *See Broders v. Heise,* 924 S.W.2d 148, 151–52 (Tex.1996). To meet this burden, the party must establish that the expert has knowledge, skill, experience, training or education regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Id.* When a party can show that a subject is substantially developed in more than one field, testimony can come from qualified experts in any of those fields. *Id.* In determining an expert's qualification, the focus should be on the expert's knowledge, skill, experience, training or education with regard to the condition underlying the claim and the standard of care that the defendant doctor is required to exercise with regard to that

condition. *See Blan v. Ali,* 7 S.W.3d at 746.

 Greenfield challenges Greenspan's qualification because his area of specialty is physical medicine and rehabilitation and because Greenspan has never had any orthopedic training or experience. Greenfield asserts that Greenspan has never "walked in the shoes of a physician like [Greenfield]" and has never been requested to perform a limited consultation on another physician's patient "solely to examine the implantation site of a spinal cord stimulator for infection." Greenfield overstates what Greenspan is required to show.

 To raise a fact issue sufficient to defeat summary judgment, the plaintiff's controverting expert should specifically identify the standard of care, establish the expert's familiarity with that standard, and explain why the treatment rendered by the defendant health-care provider breached the applicable standard. *Silvas v. Ghiatas,* 954 S.W.2d 50, 53 (Tex.App.—San Antonio 1997, writ denied). Greenspan's affidavit states that his practice focuses on physical medicine, rehabilitation, and pain management. Greenspan further states that his field of practice includes treatment of patients with chronic back pain, including implantation of spinal cord stimulators and post operative care for this procedure. As Greenspan states, his field of practice is relevant to the Keetons' claims because David's injuries arose out of the implantation of a spinal cord stimulator and post-operative treatment for that implantation. Greenspan states that he often consults with physicians who implant spinal cord stimulators and that he has participated in the implantation of these devices and has treated patients following the implantation of such devices. Greenspan states that he is familiar with the standards applicable to post-operative care of patients who have had spinal cord stimulators implanted and

has a practical knowledge of the actions usually and customarily taken by practitioners under the circumstances of David's case. Greenspan states that the standard of care requires close monitoring of a patient who has had a spinal cord stimulator implanted for signs of infection. Greenspan then explains that Greenfield breached the standard of care by failing to diagnose David's infection when at the time Greenfield examined David, David had painful and seriously discolored fingers and a surgical site that was discolored, painful, inflamed, and seeping fluid. Greenspan states that Greenfield should have considered that the finger problem may be the result of a migratory embolus associated with post-operative infection.

Greenspan's affidavit establishes his qualification to testify regarding the standard of care applicable to an orthopedic surgeon consulting with another physician regarding possible infection after a spinal cord stimulator is implanted.

## PROXIMATE CAUSATION

The final objection Greenfield made with regard to Greenspan's affidavit was that it failed to controvert Greenfield's evidence regarding proximate causation. Greenfield contends that Greenspan's affidavit only addresses the cause in fact element of proximate causation, not the foreseeability.

■ Proximate causation embraces two concepts: cause in fact and foreseeability. *Leitch v. Hornsby*, 935 S.W.2d 114, 119–120 (Tex.1996). Greenfield concedes that Greenspan's affidavit raises a question of fact regarding the "cause in fact" concept, but he contends that the affidavit fails to address the foreseeability concept.

■ Foreseeability means that the actor, as a person of ordinary intelligence and prudence, should have anticipated the dangers that his negligent act created.

*Hall v. Huff*, 957 S.W.2d 90, 96 (Tex. App.—Texarkana 1997, pet. denied). Foreseeability does not require the actor to anticipate the precise manner in which injury will occur, but the injury must be of such general character as might reasonably have been anticipated. *See id.*

■ Greenspan's affidavit states:
When Mr. Keeton presented painful and seriously discolored fingers on August 16, 1996, along with a spinal cord stimulator surgical site that was discolored and had been painful, inflamed, and seeping fluid, Dr. Greenfield *should have considered* that the finger problem may be the result of a migratory embolus associated with post-operative infection. This is especially true if Dr. Greenfield was told by Mr. and Mrs. Keeton that the finger problem did not begin until after the surgery had been performed and the surgical site had become painful and begun to seep fluid. This breach of the relevant standard of care [failing to consider that the finger problem may be the result of a migratory embolus associated with post-operative infection] caused Mr. Keeton tremendous pain, allowed Mr. Keeton's post-operative infection to worsen, allowed Mr. Keeton's fingers to further deteriorate, and ultimately was a cause of the loss of his index finger.

(emphasis added). The Keetons stated that they reported David's finger problem and their concern about his wound site to Greenfield and inquired about the possibility of infection. Greenspan states that based on those reported symptoms, Greenfield should have foreseen the possibility of migratory embolus associated with post-operative infection. From Greenspan's statement that post-operative infection must be aggressively treated, a reasonable inference can be made that the failure to aggressively treat a post-operative infec-

tion can result in the type of complications David experienced.

## MERITS OF THE SUMMARY JUDGMENT

Greenspan was a qualified expert, and the Keetons should have been permitted to amend Greenspan's affidavit to overcome the objection under article 4590i. Greenspan's amended affidavit, coupled with the factual recitations in the Keetons' affidavits, was sufficient to raise a genuine issue of material fact as to the causation elements of the Keetons' cause of action, making summary judgment in Greenfield's favor improper.

## CONCLUSION

The trial court's judgments in favor of Carrasco and Greenfield are reversed, and the cause is remanded to the trial court for trial.

Dissenting opinion by: SARAH B. DUNCAN, Justice.

DUNCAN, Justice, dissenting.

I respectfully dissent.

## CARRASCO

"A plaintiff's duty to use diligence continues from the date suit is filed until the date the defendant is served." *Rodriguez. v. Tinsman & Houser, Inc.,* 13 S.W.3d 47, 50 (Tex.App.—San Antonio 1999, pet. denied). A lack of diligence is established as a matter of law if no valid excuse for the lack of service is offered. *Id.* In the context of a summary judgment, the burden rests upon the movant to prove a lack of diligence. *Id.*

Here, Schorn's affidavit arguably establishes the exercise of diligence from September 30—the date the first citation was issued—through December 14—the date

Schorn states he believed Carrasco's answer was due but not filed.[2] Schorn then states he caused a second citation to be issued on January 5, 1999, and this citation was served on Carrasco on February 2, 1999. However, Schorn provides no excuse for the delay between December 14, 1998 and January 5, 1999, the date the second citation was issued; nor does he explain the delay between January 5 and January 27, 1999, the date a third citation was issued or between January 27 and February 2, the date of service. Under these circumstances, the failure to exercise diligence is established as a matter of law. *See id.* at 51. Accordingly, I would affirm the summary judgment in favor of Carrasco.

## GREENFIELD

Greenspan's only testimony concerning causation was as follows:

This breach of the relevant standard of care caused Mr. Keeton tremendous pain, allowed Mr. Keeton's post-operative infection to worsen, allowed Mr. Keeton's fingers to further deteriorate, and ultimately was a cause of the loss of his index finger.

Greenspan thus testified only as to cause in fact. Because his affidavit fails to raise a material issue of fact as to the foreseeability component of causation, I would affirm the summary judgment in Greenfield's favor. *See Ortiz v. Santa Rosa Medical Center,* 702 S.W.2d 701, 705 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

## CONCLUSION

Because the trial court correctly granted summary judgment in favor of Carrasco

---

**2.** In fact, if Carrasco had been served on October 23, 1998, his answer would have been due November 16, 1998. TEX.R.CIV.P. 99(b).

and Greenfield, I would affirm the judgment.