NO. 07-02-0503-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 8, 2004
_____

GAMALIEL RAMIREZ, JR. and CHRISTINA RAMIREZ,

Appellants

v.

CONSOLIDATED HGM CORPORATION,

Appellee
_____

FROM THE 237th JUDICIAL DISTRICT OF LUBBOCK COUNTY;

NO. 96-554-469; HON. SAM MEDINA, PRESIDING
_____

*Opinion*
_____

Before QUINN, REAVIS and CAMPBELL, JJ.

Gamaliel Ramirez, Jr. and Christina Ramirez (the Ramirezes) appeal from a final summary judgment denying them recovery against Consolidated HGM Corporation (HGM). Their five issues concern whether the trial court erred in granting HGM's motions to quash service of process and for summary judgment. Through the former, HGM contended that it was improperly served with citation given that an individual other than the corporation's registered agent (to whom the certified mail was addressed) signed for and received the

process. Through the motion for summary judgment, HGM raised the spectre of limitations; it contended that since the Ramirezes failed to exercise due diligence in perfecting service after the suit was filed they were barred from recovering. We affirm the summary judgment.

### *Prologue*

Prior to addressing the merits of the appeal, we make the following observation. In their appellate briefs, the Ramirezes seem to suggest that both the motion to quash and motion for summary judgment addressed the propriety of the service attempted upon HGM. To the extent they do so, however, they are mistaken. The trial court was asked to determine the propriety of service only in the motion to quash. Only after the trial court acted upon the motion and quashed service did HGM move for summary judgment. And, while HGM alluded to the propriety of service in its summary judgment motion, it did so by averring that service already had been quashed via a prior order of the court. It did not purport to re-open the issue. Moreover, the Ramirezes recognized the state of affairs in their response to the motion for summary judgment.

### *Point Five — Quashing Service*

We address the Ramirezes' fifth point first since the trial court's action *viz* the motion to quash established the foundation upon which HGM subsequently moved for summary judgment. Furthermore, in the issue, they argue that the trial court erred in quashing service. We disagree.

Whether service is valid involves a question of fact to be decided by the trier of fact. *Ward v. Nava*, 488 S.W.2d 736, 737-38 (Tex. 1972); *HCFCO, Inc. v. White*, 750 S.W.2d

2

23, 24 (Tex. App.--Waco 1988, no writ). However, the trier of fact in a case like that at bar is the trial court. *Willacy County Appraisal Review Bd. v. South Padre Land Co.*, 767 S.W.2d 201, 203 (Tex. App.--Corpus Christi 1989, no writ) (stating that "the issue of lack of service is clearly a question of fact to be determined by the trial court"); *accord, Ward v. Nava*, *supra* (refusing to disturb the *trial court's* finding that the facts specified in the affidavit failed to establish the lack of service). As stated in *Union Pacific Fuels, Inc. v. Johnson*, 909 S.W.2d 130 (Tex. App--Houston [14th Dist.] 1995, no writ), a party is not entitled to a jury trial on fact issues that arise from preliminary motions and pleas which do not involve the merits or ultimate disposition of the case on the merits. *Id.* at 135.

Next, a return of citation served by registered or certified mail must contain the return receipt, and the latter must contain the addressee's signature. TEX. R. CIV. P. 107; *Keeton v. Carrasco*, 53 S.W.3d 13, 19 (Tex. App.--San Antonio 2001, pet. denied). If the return receipt is signed by someone else, then service of process is defective. *Keeton v. Carrasco*, 53 S.W.3d at 19; *see All Comm. Floors, Inc. v. Barton & Rasor*, 97 S.W.3d 723, 726-27 (Tex. App.--Fort Worth 2003, no pet.) (holding that service was defective because the return receipt was signed by neither the addressee or registered agent for the entity); *Webb v. Oberkampf Supply of Lubbock, Inc.*, 831 S.W.2d 61, 64 (Tex. App.--Amarillo 1992, no writ) (holding that service was defective because, among other things, the return receipt was not signed by the addressee); *Pharmakinetics Lab., Inc. v. Katz*, 717 S.W.2d 704, 706 (Tex. App.--San Antonio 1986, no writ) (holding service defective because the return receipt was signed by someone other than the addressee). Finally, if defective, then the attempted service is invalid and of no effect. *Wilson v. Dunn*, 800 S.W.2d 833, 836

3

(Tex. 1990), *quoting Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985); *Webb v. Oberkampf Supply of Lubbock, Inc.*, 831 S.W.2d at 64.

Here, the record illustrates that service was attempted by certified mail, return receipt requested. Furthermore, the addressee of the certified mail was "Consolidated HGM Corporation serving its registered agent Dana T. White . . . ." However, the return illustrates that a "Jack Danley" signed for the mailing. According to the record, Jack Danley and Dana White were two different individuals. So, given that the actual addressee did not sign the return receipt, the trial court had before it ample evidence upon which to conclude that service was defective and, therefore, quash it.

Nonetheless, the Ramirezes argue that any questions about the propriety of service were rendered moot. This is purportedly so because HGM filed an answer after the trial court stated that it was "going to grant the motion to quash" but before the order actually granting the motion was signed.[1] We find the contention meritless for reasons aside from the fact that the argument was never raised below.

First, it is quite true that filing an answer normally constitutes a general appearance, thereby dispensing with the need for the issuance and service of citation. TEX. R. CIV. P. 121; *Burrow v. Arce*, 997 S.W.2d 229, 246 (Tex. 1999). Similarly true is that some courts have held that filing an answer effectively waives complaints touching upon service. *See*

---

[1]Below, the Ramirezes attempted to defeat the motion to quash by arguing that service was not defective since Danley was the "implied agent" of HGM and Dana White. Yet, on appeal, the theory of "implied agency" was not invoked by the Ramirezes in effort to reverse the trial court's decision regarding the motion to quash. Instead, they raised the theory in effort to reverse the summary judgment. That is, they believe the trial court should not have granted the summary judgment because they presented evidence creating a material issue of fact regarding whether Danley was this implied agent. So, for purposes of this appeal, we do not assess the effect, if any, of the Ramirezes' agency theory upon the decision to grant the *motion to quash service*.

4

*e.g., In re $475,001.16*, 96 S.W.3d 625, 628-29 (Tex. App.--Houston [1st Dist.] 2002, no pet.); *$6453.00 v. State*, 63 S.W.3d 533, 535-36 (Tex. App.--Waco 2001, no pet.). Yet, filing an answer does not waive defects in service when those defects are being alluded to in effort to show that the applicable limitations period expired. Quite the contrary, one may still develop those defects for that purpose. *Seagraves v. City of McKinney*, 45 S.W.3d 779, 782-83 (Tex. App.--Dallas 2001, no pet); *Taylor v. Thompson*, 4 S.W.3d 63, 66 (Tex. App.--Houston [1st Dist.] 1999, pet. denied). And, that was the tact pursued by HGM below. It sought to dispose of the suit on the basis of limitations. Doing so required it to prove that limitations was never tolled because it (HGM) was never served with process within the applicable limitations period. Doing that required it to prove that the Ramirezes' attempt at service was defective. So, it does not matter whether HGM filed an answer before the trial court ruled on HGM's motion to quash, given the circumstances at bar.

Second, to adopt the Ramirezes' proposition here would be to revive archaic notions about due order of pleadings. *See America Online, Inc. v. Williams*, 958 S.W.2d 268, 276 n.5 (Tex. App.--Houston [14th Dist.] 1997, no pet.) (noting that the rule about defensive matters having to be pled and resolved in due order was eliminated save for special appearances and motions regarding venue). Again, before HGM joined issue by way of its answer, it had already moved to quash service. So too had the trial court heard the motion and informed the parties that it would grant it once the appropriate order was received. This hardly evinces an intent to waive the complaint. Additionally, nothing in either Rule 121 or 122 of the Texas Rules of Civil Procedure says anything about the trial

court having to resolve a motion to quash as a condition to preserving a complaint about service. More importantly, we refuse to read such a requirement into the rules when more is sought by the defendant here than simply gaining time to answer. *See* TEX. R. CIV. P. 122 (stating that if citation is quashed, the defendant shall be deemed to have entered his appearance at 10:00 o'clock a.m. on the Monday next after the expiration of 20 days after the day citation was quashed); *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 202 (Tex. 1985) (stating that the sole relief available to one questioning service is additional time to answer).

As previously mentioned, ample evidence exists to support the trial court's decision to quash service of citation. Furthermore, we reject the assertion that because HGM filed an answer before the trial court ruled on the motion to quash it waived its complaints about the validity of service. Given this, the trial court did not err in quashing service.

### Point One — Summary Judgment

Through issue one, the Ramirezes question the validity of the summary judgment by asserting that material issues of fact existed regarding their diligence in perfecting service.[2] We overrule the point.

---

[2]As previously mentioned, the Ramirezes also argue that questions of material fact existed regarding whether Danley was the "implied agent" of HGM and White, and because of that, summary judgment was improper. This contention was asserted in their reply brief and exemplifies an instance wherein they confuse what was litigated via the motion to quash and via the motion for summary judgment. As we stated in footnote one *supra*, the trial court adjudicated the agency matter when it entertained the motion to quash. One need only read the transcript of the hearing upon the motion to quash and Ramirezes' response to the motion for summary judgment to see that this is true. In the former, the trial judge was recorded saying ". . . I don't think he's anywhere near an implied agent in this particular case." In the latter, the Ramirezes assert that "[o]n June 22, 2001, [the trial] court granted the Defendant's Motion to Quash the Certified Mail citation in this case, *finding that . . . Danley was not an implied agent to accept service of process . . . .*" (Emphasis added). Moreover, the only ground upon which the Ramirezes sought to avoid summary judgment below encompassed their diligence and reasonableness in perfecting service. Nowhere in their response did they purport to reopen the agency question. So, because neither HGM nor the Ramirezes sought to relitigate the matter of agency as part of the summary judgment proceeding, that ground cannot be invoked as a basis for

6

*Diligence in Perfecting Service*

Merely filing suit does not toll limitations. *Murray v. San Jacinto Agency. Inc.*, 800 S.W.2d 826, 829-30 (Tex. 1990); *Reynolds v. Alcorn*, 601 S.W.2d 785, 788 (Tex. Civ. App.--Amarillo 1980, no writ). Rather, the complainant must also utilize due diligence in perfecting service of citation upon his opponent. *Reynolds v. Alcorn*, 601 S.W.2d at 788; *accord Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex.1990); *Webster v. Thomas*, 5 S.W.3d 287, 289 (Tex. App.--Houston [14th Dist.] 1999, no pet.).[3] Next, the diligence necessary is that which a reasonably prudent person would utilize in the same or similar circumstances. *Reynolds v. Alcorn*, 601 S.W.2d at 788. More importantly, the duty to act with diligence continues until service is obtained. *Id.* One cannot simply request service and do nothing else. Again, he must put forth that effort which a reasonably prudent person would in performing his duty. Nor can the complainant avoid his obligation to act diligently by delegating the task to others. This is so because the burden lies with the plaintiff to see that service occurs in a timely and correct manner. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 152, 153 (Tex.1994); *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d 587, 590 (Tex. App.--Corpus Christi 1994, no writ) (holding that misplaced reliance

reversing the summary judgment. TEX. R. CIV. P. 166a(c) (stating that "issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal").

Finally, and to the extent that one could possibly construe the Ramirezes' argument about "implied agency" as suggesting that questions of fact regarding agency precluded the trial court from granting HGM's motion to quash, we cite to *Willacy County Appraisal Review Bd. v. South Padre Land Co.*, 767 S.W.2d 201 (Tex. App.--Corpus Christi 1989, no writ) and *Union Pacific Fuels, Inc. v. Johnson*, 909 S.W.2d 130 (Tex. App.--Houston [14th Dist.] 1995, no writ). Again, they hold that a trial court may resolve issues of fact raised in preliminary motions such as one involving the validity of service.

[3]Knowledge of this rule, like any other law, is constructively imputed to attorneys. *See Webster v. Thomas*, 5 S.W.3d 287, 291 (Tex. App.--Houston [14th Dist.] 1999, no pet.) (imputing such knowledge to legal counsel); *Weaver v. E-Z Mart Stores, Inc.*, 942 S.W.2d 167, 169 (Tex. App.--Texarkana 1997, no writ) (holding that all are held to constructively know the law of Texas).

on a process server did not constitute due diligence); *Reynolds v. Alcorn*, 601 S.W.2d at 788 (holding that Reynolds' reliance on the district clerk and implied reliance on the local attorney are immaterial for their acts, or lack thereof, were imputed to Reynolds).

Next, while the issue of diligence normally encompasses a question of fact, it may be resolved as a matter of law. *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d at 590. That is, a trial court may hold, as a matter of law, that diligence was lacking 1) when no excuse was proffered explaining the delay, *or* 2) if the amount of time which lapsed coupled with the plaintiff's actions conclusively negate diligence. *Weaver v. E-Z Mart Stores, Inc.*, 942 S.W.2d 167, 169 (Tex. App.--Texarkana 1997, no writ); *Gonzalez v. Phoenix Frozen Foods, Inc.*, 884 S.W.2d at 590.

The record at bar illustrates that the Ramirezes sued HGM to recover damages. The injuries arose when Mr. Ramirez' arm allegedly became entangled in a cotton lint cleaner. The event occurred on November 10, 1993. Suit was filed on August 30, 1995.[4] Service of citation upon HGM was attempted via the United States certified mail. As previously mentioned, the addressee for the citation was Dana White, the corporation's registered agent. However, Ms. White did not receive the mailing. Rather, it was delivered to Jack Danley, who signed the return receipt on September 5, 1995. Several years passed before HGM moved, on November 2, 1998, to quash service. Over two and one-half years later, that is, on June 22, 2001, the motion came for hearing. Though the trial court opined, at the hearing, that it intended to grant the motion, an order effectuating that intent was not signed until July 12, 2002, that is, over a year later. As a result of the order,

---

[4]No one disputes that the Ramirezes had two years from November 10, 1993, to file suit.

the Ramirezes attempt at service was not only rendered invalid but of no effect. *Wilson v. Dunn*, *supra*; *Webb v. Oberkampf Supply of Lubbock, Inc.*, *supra*. In other words, the Ramirezes never perfected service upon HGM during the approximately nine years between the date the injury occurred and the trial court signed its order quashing service, five years between the date of injury and the time HGM informed them of a defect in service via its motion to quash, and three years between the date suit was filed and HGM moved to quash service. Thus, we conclude, as a matter of law, that the two-year period of limitations expired long before HGM moved to quash, unless, of course, evidence of record appears from which it can be reasonably inferred that the Ramirezes' delay was reasonably excusable and they used diligence in attempting to perfect service.

As to the matter of diligence, the Ramirezes sought to justify the absence of citation by uttering several excuses. The first involved their contention that service was attempted and Danley received the citation via certified mail within six days of filing suit. Next, they asserted that "[c]ontact was made with the District Clerk's office to confirm service upon the Defendants in September, 1995, and the district clerk advised that all . . . had been served with citation." Also mentioned was that "[c]ounsel for the plaintiffs knew . . . Danley was involved in the operation of . . . HGM . . ."; though when they so knew went unmentioned.

Next, counsel for the Ramirezes attested that 1) he "was advised by the District Clerk that Certified Mail citations were mailed to the addresses shown and that they were signed for and returned" (though counsel did not say that anyone either asked for or was told of the name of the person who signed for the mail despite the fact that the letters were addressed to a particular individual), 2) he "should be entitled to reasonably rely upon the

9

. . . Post Office delivering mail to the address shown on the mail," 3) he "should also be able to reasonably assume that Jack Danley had authority to receive mail on behalf of Dana T. White or he would not have signed for the Certified Mail," 4) he met with Danley on the morning of June 1, 2001, and was told by Danley that "he had been the Chief Executive Officer for Consolidated HGM . . . and a personal friend of . . . White," 5) "HGM ceased to operate" in 1991 but maintained the use of the address to which the citation was sent, according to Danley, 6) mail would be delivered to HGM at the address and Danley would "sign for mail addressed to . . . White and put it in a brown box . . . for White to pick up," according to Danley, 7) White told Danley to accept her mail and never told him to stop signing for it, according to Danley, 8) Danley accepted other certified mailing because White "wanted him to," according to Danley, 9) counsel believed "Danley was authorized by . . . White to receive certified mail addressed to . . . White, as agent for . . . HGM," 10) White "must have had notice of the lawsuit" since HGM moved to quash service, 11) counsel "had no reason to believe that . . . Danley lacked authority to accept mail addressed to . . . White, until the motion to quash citation was filed," and 12) "Plaintiffs and their counsel should be able to assume, as reasonable people, that when someone signs for certified mail addressed to another person, that the person signing has authority to accept same."[5]

It is important to place the foregoing summary judgment evidence in its correct perspective. Again, the only grounds which we can consider in assessing whether to

---

[5]Below, HGM did not object to the affidavit on the basis that it contained hearsay. Nor did it raise the matter on appeal. So, we do not consider whether it or parts thereof were subject to being struck on that basis.

reverse the summary judgment are those "expressly" presented in the motion and any answers or responses to it. TEX. R. CIV. P. 166a(c). Furthermore, HGM did not expressly raise the issue of "implied agency" in its motion for summary judgment. Nor did the Ramirezes expressly do so in their response to the motion. So, the proper perspective of the evidence does not involve whether an "implied agency" existed. Rather, we must view it from the perspective expressly mentioned in the summary judgment response, that being whether a reasonable person was entitled to believe that HGM was served with citation. In other words, the Ramirezes are limited to arguing that their delay in perfecting service was reasonably excusable since they believed Danley was the agent of White or HGM. The excuse was and is of no effect, however. Furthermore, it affirmatively established a lack of reasonable diligence on their part. *See Keeton v. Carrasco*, 53 S.W.3d 13, 18 (Tex. App.--San Antonio 2001, pet. denied) (stating that a lack of diligence can be found even in the face of an offered explanation if that explanation affirmatively established a lack of reasonable diligence).

First, the onus of assuring that service was properly made upon HGM was that of the Ramirezes. *Primate Constr., Inc. v. Silver*, *supra*; *Gonzalez v. Phoenix Frozen Foods, Inc.*, *supra*. For instance, relying upon the representations of a trial court about the status or validity of service does not otherwise justify a want of diligence. *Perry v. Kroger Stores*, 741 S.W.2d 533, 536 (Tex. App.--Dallas 1987, no writ). The same is true about representations of a district clerk. Relying on them does not constitute reasonable justification for neglecting to perfect service of citation. *Id.*; *Reynolds v. Alcorn*, 601 S.W.2d at 788. So, that counsel for the Ramirezes or someone acting for him may have phoned

11

the district clerk and heard from that official that service had been completed does not justify their failure to serve HGM.[6] And, this seems especially apropos here. Several years passed before HGM appeared in the case. The lapse of such period of time without the defendant doing anything should, at the very least, arouse curiosity. Yet, there exists a dearth of evidence explaining what, if anything, the Ramirezes did to investigate the delay. Indeed, their first attempt to act upon the delay came three years after service was allegedly perfected, that is, when they informed the court of their desire for a default judgment against HGM.

Nor can we agree with the proposition that a reasonable litigant and his attorney would or could simply assume that someone other than the addressee of a certified mailing who signs for the missive has the authority to accept it simply because he signed for it. This proposition runs contrary to precedent holding that service of citation is not perfected by certified mail when someone other than the actual addressee signs for the document. *See e.g., Pharmakinetics Lab., Inc. v. Katz*, 717 S.W.2d at 706. To be diligent, one who realizes that someone other than the addressee signed for the delivery must, at the very least, investigate the situation or the extent of the recipient's authority. In that regard, about 69 months lapsed between the time Danley received the certified mailing and the Ramirezes contacted him about the extent of his authority, if any. And, for the last 30 of those 69 months, they undoubtedly knew of the potential defect in service since HGM had filed its motion to quash.

---

[6]We note that the affidavit of the Ramirezes' counsel does not identify the individual who purportedly phoned the clerk.

12

Nor can we say that because Danley was once the chief executive officer of HGM, a reasonable person could assume that he was entitled to accept service of citation for the corporation. At the very least, the evidence of record illustrates he ceased holding that post about two years before suit was filed. One cannot infer that simply because an individual at one time acted on behalf of some company he continues to have the authority to do so years later. *See Carnell v. Kinser*, 196 S.W.2d 941, 943 (Tex. Civ. App.--Amarillo 1946, writ ref'd) (stating that the mere fact that a person recognizes another as his agent or ratifies his acts at one time and with regard to one transaction neither implies that he is authorized generally to act as agent nor carries the implication that he has specific authority at another time).

Finally, that garnered from Danley as a result of his conversation with the Ramirezes' attorney is of little benefit to them. This is so because by the time Danley supposedly told them he often received mail for and acted pursuant to White's request, 69 months had lapsed since the time service was attempted. In other words, they could not rely on Danley's comments to explain their conduct since those comments had yet to be uttered. Simply put, one cannot rely on words no one has said.

In sum, the excuses proffered by the Ramirezes and their counsel to justify their failure to serve HGM with citation are unreasonable, as a matter of law. Furthermore, those excuses also evince a want of diligence, as a matter of law. A reasonable litigant does not wait months or years to investigate circumstances that may negate his recovery when the law demands diligence. Accordingly, we hold that the trial court did not err by granting HGM summary judgment.

13

Having overruled issues one and five relieves us from having to address issues two, three and four.  They were either encompassed in the ones addressed or rendered moot by our decisions *viz* issues one and five.  Therefore, we affirm the summary judgment.


Brian Quinn
Justice